**Kenny DAVIS, Plaintiff–Appellee,**

v.

**Lt. James LOCKE and Lt. Gemelli, Defendants–Appellants.**

**Nos. 90–5008, 90–5556.**

United States Court of Appeals, Eleventh Circuit.

July 26, 1991.

Before HATCHETT and BIRCH, Circuit Judges, and RONEY, Senior Circuit Judge.

BIRCH, Circuit Judge:

This case involves a prison inmate who alleged that his civil rights were violated by two prison guards upon apprehension after an attempted escape. Appellee Kenny Davis claimed that appellants James Locke and Norman Gemelli violated his constitutional rights when they dropped him, headfirst, from the back of a pickup truck while his hands were shackled behind his back. After a jury trial, Davis was awarded punitive damages and attorneys' fees against Locke and Gemelli. On appeal, Locke and Gemelli challenge the jury's verdict and the award of attorneys' fees. For the reasons that follow, we AFFIRM.

## I. BACKGROUND

Davis was incarcerated at Hendry Correctional Institution (HCI). On September 19, 1984, Davis attempted to escape from HCI and was recaptured by Locke and Gemelli in an orange grove near the prison. For the trip back to HCI, Davis was confined in a dog cage on the back of the guards' truck with his hands shackled behind his back. Davis testified that Locke and Gemelli taunted him with racial slurs and threatened to "teach [him] a lesson" when they returned to HCI.[1]

At the prison, the guards allegedly grabbed Davis by his ankles and pulled him from the dog cage. Because his hands were shacked behind his back, Davis claimed that he landed on his head. The guards then pulled Davis to his feet and took him to the prison medical facility for treatment before returning him to confinement.

Davis filed a *pro se* complaint in the district court on November 20, 1984. With the assistance of court-appointed counsel,

George L. Waas, Asst. Atty. Gen., Tallahassee, Fla., for defendants-appellants.

William R. Amlong, Amlong & Amlong, Fort Lauderdale, Fla., for plaintiff-appellee.

---

1. Deposition of Kenny Davis at 20. Davis's deposition was taken on March 10, 1988, and read into evidence at trial. Kenny Davis died on November 14, 1988, from causes unrelated to this litigation. His wife, Geraldine Davis, was substituted for the plaintiff as the personal representative of his estate.

Davis filed an amended complaint on March 14, 1986. The amended complaint sought civil damages against Locke, Gemelli and prison superintendent Charles P. Worthington under 42 U.S.C. §§ 1981, 1983, 1985(3) and 1986. Davis contended that the defendants violated his constitutional rights to be free from, among other things, cruel and unusual punishment, the use of excessive force, and racial discrimination. Davis also sought to recover his attorneys' fees.

At trial, Davis offered expert psychiatric testimony that he suffered severe psychological injuries as a result of this incident. The jury did not hear any evidence that Davis suffered physical injuries attributable to his fall. The verdict form presented a series of questions pertaining to each defendant. The jury was asked to decide whether each defendant violated Davis's constitutional rights by: (1) placing him in the dog cage; (2) taunting him with racial slurs; (3) causing him to fall from the back of the truck; (4) punching him in the face at the prison medical facility; and (5) placing him in solitary confinement.

The jury verdict acquitted Worthington on all counts, but found that Locke and Gemelli violated Davis's constitutional rights by causing him to fall from the back of the truck. The jury awarded no compensatory damages, but permitted Davis to recover $1,750 in punitive damages from both Locke and Gemelli. The district court denied Locke and Gemelli's motion for JNOV. Davis then moved for a new trial as to the final judgment in favor of Worthington.

While Davis's motion was pending, Locke and Gemelli appealed the denial of their motion for JNOV. That appeal was dismissed by this court on jurisdictional grounds on January 25, 1990, because Davis's motion for new trial had not yet been decided when the appeal was filed. Davis's motion for new trial was denied on November 29, 1989, at which time the district court also granted Davis's motion to tax costs. Locke and Gemelli filed an amended notice of appeal, regarding the final judgment and the decision to tax costs, on December 26, 1989.

Davis's motion for attorneys' fees was heard by a United States magistrate on March 9, 1990, and the magistrate issued his report and recommendation on April 13, 1990. The district court awarded Davis $62,643.20 in attorneys' fees in a final judgment on July 18, 1990. Locke and Gemelli filed a second amended notice of appeal, which added the award of attorneys' fees to the other issues that had been appealed previously.

## II. DISCUSSION

### A. Locke and Gemelli's Notices of Appeal

■ Davis argues that this court has no jurisdiction over Locke and Gemelli's appeal because their notices of appeal were filed untimely. The defendants filed their original Notice of Appeal on September 25, 1989, while Davis awaited a ruling on his pending motion for new trial. Fed.R. App.P. 4(a)(4) provides that a notice of appeal is invalid if filed during the pendency of a timely motion for new trial, so the September 21, 1989 notice of appeal was premature and ineffective.

■ After the district court denied Davis's motion for new trial, Locke and Gemelli filed an Amended Notice of Appeal on December 26, 1989. A Second Amended Notice of Appeal was filed on June 28, 1990. Davis contends that the amendments are inconsequential because "a notice of appeal that is void at the outset cannot by amendment become anything other than void." *Trinidad Corp. v. Maru*, 781 F.2d 1360, 1362 (9th Cir.1986). In this circuit, however, notices of appeal are to be liberally construed. *Osterneck v. E.T. Barwick Industries, Inc.*, 825 F.2d 1521, 1528 (11th Cir.1987), *aff'd*, 489 U.S. 169, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989). Moreover, in *Trinidad* the Ninth Circuit chastised the appellants but disregarded their designation of a "second amended notice of appeal" and treated the pleading as the new notice required by the Federal Rules of Appellate Procedure. 781 F.2d at 1362.

Davis has presented no evidence that he might be prejudiced by our acceptance of this appeal, and Locke and Gemelli's amended notices of appeal specified all orders of the district court from which relief was sought. *Compare Osterneck*, 825 F.2d at 1528–29 (notice of appeal will not be expanded to include judgments and orders not specified unless intent to appeal is apparent from the face of the notice). This court subsequently notified Locke and Gemelli that their appeal had been properly filed and docketed. Accordingly, we will construe the "amended" notices of appeal without reference to the original, invalid notice of appeal and proceed to the merits of this case.

B. *Davis's Claim Under 42 U.S.C. § 1983*

Locke and Gemelli appeal the district court's denial of their motions for directed verdict and judgment notwithstanding the verdict ("JNOV") on this claim. On review, we must consider all of the evidence in the light most favorable to the party opposed to the motion. *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir.1990). Reversal is proper only if the facts and inferences point so strongly in favor of the movant that reasonable jurors could not arrive at a contrary verdict. *Id.*

Davis contends that Locke and Gemelli violated his eighth amendment right to be free from cruel and unusual punishment and his fourteenth amendment right to due process of law when they pulled him from the dog cage and caused him to fall to the ground. Section 1983 provides a federal remedy for the deprivation of rights, privileges or immunities protected by the constitution or the laws of the United States.

The eighth amendment "prohibits the unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification." *Ort v. White*, 813 F.2d 318, 321 (11th Cir.1987). In the context of prison discipline, we must consider

> the distinction between, on the one hand, "punishment" in the strict sense and, on the other, immediately necessary coercive measures undertaken to obtain compliance with a reasonable prison rule or

regulation. Punishment in the strict sense involves a penalty which is deliberately administered after reflection and evaluation in response to conduct occurring in the past.... Punishment in this sense is not designed to bring an ongoing violation to a halt.

*Id.* at 322 (footnote omitted). However, "an isolated assault by an individual guard on an inmate is not, within the meaning of the eighth amendment, punishment." *George v. Evans*, 633 F.2d 413, 415 (5th Cir.1980).

Even if a physical assault does not constitute cruel and unusual punishment, "the use of undue force by a prison guard is actionable as a deprivation of fourteenth amendment due process rights." *Id.*, 633 F.2d at 416. Moreover, the fourteenth amendment is violated "where prison officers continue to employ force or other coercive measures after the necessity for such coercive action has ceased." *Ort*, 813 F.2d at 327.

 The Supreme Court has explained that this issue turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). At the time of the incident in question, Davis had been recaptured after his escape from prison. He was confined in a dog cage with his hands shackled behind his back. Under these circumstances, the "ongoing violation" of escape had been terminated, and a jury could reasonably conclude that Davis posed no continuing threat to Locke or Gemelli.

 The record evidence supports a jury determination that Locke and Gemelli intended to punish Davis for his attempted escape and did so through the use of excessive force, in violation of the fourteenth amendment, when they pulled Davis from the dog cage. There was evidence at trial that the guards taunted Davis with racial epithets and threatened to teach him a les-

son when they returned to the prison.[2] A reasonable juror could conclude that Locke and Gemelli fulfilled that threat. Davis also presented uncontradicted psychiatric testimony that the incident caused him severe psychological injuries, and such evidence is directly relevant to the issue of damages under section 1983. *See Busby v. City of Orlando*, 931 F.2d 764, 784 (11th Cir.1991). The evidence was not so insubstantial as to warrant a directed verdict or JNOV as a matter of law, and we therefore affirm the district court's denial of Locke and Gemelli's motions on this claim.

Davis also sought civil damages for Locke and Gemelli's actions under 42 U.S.C. §§ 1981, 1985(3) and 1986. The jury verdict did not tie its award of damages to violation of a particular statute; the verdict simply held Locke and Gemelli responsible for violating Davis's constitutional rights when they pulled him from the dog cage and let him fall to the ground. Our decision to affirm the jury verdict under section 1983 obviates any need to consider Locke and Gemelli's alternative arguments against recovery under sections 1981, 1985(3) or 1986.

### C. *The Qualified Immunity Defense*

Locke and Gemelli argued that their actions were protected by the doctrine of qualified immunity, and moved for directed verdict and JNOV on those grounds. The district court held that the defendants were not entitled to qualified immunity. Locke and Gemelli appeal that decision.

Qualified immunity protects government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The objective reasonableness standard "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); *Hutton v. Strickland*, 919 F.2d 1531, 1537 (11th Cir. 1990).

■ This circuit analyzes qualified immunity claims under the objective reasonableness standard through application of a two-part test. *Hutton*, 919 F.2d at 1537. Initially, the public official must prove that he was acting within the scope of his discretionary authority when the incident occurred; if he does so, the plaintiff must demonstrate that the official's actions violated clearly established constitutional law. *Id.; Rich v. Dollar*, 841 F.2d 1558, 1563–64 (11th Cir.1988). The incident at issue occurred on September 19, 1984, so we must examine the reasonableness of Locke and Gemelli's conduct in the context of the established constitutional law at that time. *See Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738.

■ In 1984, the law of this circuit prohibited the unjustified use of excessive force by a prison guard against an inmate. *See, e.g., George*, 633 F.2d at 416; *Dailey v. Byrnes*, 605 F.2d 858, 860–61 (5th Cir. 1979). The evidence supports a conclusion that Davis posed no continuing threat to Locke or Gemelli after he was recaptured, and a reasonable juror could view the guards' use of force as unjustified and excessive under these circumstances.[3] The district court did not err by refusing to grant a directed verdict or JNOV on the basis of qualified immunity.

---

2. On the verdict form, the jury could not agree whether Locke and/or Gemelli violated Davis's constitutional rights by taunting him with racial slurs. Locke and Gemelli argue, in the context of Davis's claim under 42 U.S.C. § 1981, that such failure is tantamount to a finding that the defendants did not utter any racial slurs. However, the verdict evidences the jury's inability to decide whether racial slurs alone, if uttered, could violate Davis's constitutional rights; that result does not mandate or even suggest that the

jury concluded that Locke or Gemelli never taunted Davis at all.

3. Although Locke and Gemelli argued that Davis was somehow responsible for his fall because he "tensed his body" and slipped from their grasp when they attempted to remove him from the dog cage, that argument was rejected by the jury and the district judge.

### D. Recovery Of Punitive Damages

Locke and Gemelli appeal the district court's denial of their motions for directed verdict and JNOV on the issue of punitive damages. The jury assessed punitive damages of $1,750 each against Locke and Gemelli. No award for compensatory damages was made to Davis for physical or psychological injuries.

In this circuit, "punitive damages may be awarded in a § 1983 action even without actual loss...." *Wilson v. Taylor*, 658 F.2d 1021, 1033 (5th Cir. Unit B Oct. 1981); *see Glover v. Alabama Dept. of Corrections*, 734 F.2d 691, 694 (11th Cir.1984), *cert. granted and vacated*, 474 U.S. 806, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985), *on remand*, 776 F.2d 964 (11th Cir.1985) (affirming punitive damages award of $25,000 after jury awarded $1 in nominal damages on section 1983 claim). An award of punitive damages is authorized in a civil rights case if "the defendant was motivated by an evil motive or intent, or there must be reckless or callous indifference to federally protected rights." *Anderson v. City of Atlanta*, 778 F.2d 678, 688 (11th Cir.1985).

The jury found that Locke and Gemelli violated Davis's constitutional rights when they pulled him from the dog cage and let him fall to the ground. We have affirmed that verdict on the grounds that Locke and Gemelli's conduct violated Davis's right to due process of law under the fourteenth amendment. Davis presented evidence at trial that Locke and Gemelli's actions were motivated by racial animus and a desire to punish him for his unsuccessful attempted escape. Even in the absence of compensatory damages, the evidence supports a conclusion that Locke and Gemelli acted with reckless or callous indifference to Davis's constitutional rights. *See Glover*, 734 F.2d at 694 (11th Cir.1984). Accordingly, the jury's award of punitive damages was proper and will not be disturbed on appeal.

### E. Recovery Of Attorney's Fees

Pursuant to 42 U.S.C. § 1988, the district court permitted Davis to recover $62,643.20 in attorneys' fees on a $3,500 judgment. Locke and Gemelli argue on appeal that the award of attorneys' fees was excessive because Davis's attorneys lost on thirteen of fifteen claims, failed to recover more than nominal damages, and did not provide the court with proper documentation of time records by distinguishing time spent on victorious claims from the total number of hours spent on the case. We review the district court's decision for an abuse of discretion. *Popham v. City of Kennesaw*, 820 F.2d 1570, 1581 (11th Cir. 1987).

Davis argued at the fee hearing that the fifteen "claims" were so inextricably intertwined that it was impossible to allocate time spent among the various claims. The magistrate and the district court accepted Davis's argument. In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court recognized that

Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims.

461 U.S. at 435, 103 S.Ct. at 1940. In such cases, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

We conclude that this case presents the situation discussed in *Hensley*. Based upon one set of facts, Davis pursued his civil rights claims against three defendants. The complaint alleged that each defendant violated Davis's constitutional rights in five different ways, but each constitutional violation arose from the same operative facts. The claims were presented as alternative theories that could support a verdict. Accordingly, we will not require Davis's attorneys to allocate their time among the various claims, and we accept the district court's decision regarding the number of hours reasonably expended on the case.

 We also agree that Davis's counsel presented sufficient evidence to support an hourly rate of $150 per hour for the time expended. The hourly rate must be determined with reference to prevailing market rates in the relevant community for "lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984). The prevailing party has the burden of proof to justify the rate that he seeks to recover. *Id.*

 Davis presented testimony from three expert witnesses, who were civil rights attorneys in the same geographic area and relevant market as Davis's counsel. The magistrate and the district judge considered the proffered expert testimony and the evidence submitted by the parties before awarding a rate of $150 per hour. We find no error in the district court's acceptance of this hourly rate.

 Once a district court has determined the number of hours reasonably expended on the case and a reasonable hourly rate for compensation, those two figures are multiplied to produce the "lodestar" calculation. *Popham*, 820 F.2d at 1578. The lodestar in this case was $39,152. The district court enhanced the lodestar by a multiplier of 1.6 to compensate for the risk associated with a contingency fee, Davis's difficulty in obtaining legal counsel, and delays in payment of fees. On appeal, Locke and Gemelli challenge the enhancement because it does not reflect the allegedly modest results achieved relative to the size of the original claims.

 We reject Locke and Gemelli's contention that the success or failure of Davis's lawsuit can be judged solely by the size of the jury verdict in his case. "Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986). Moreover, "the damages a plaintiff recovers contributes [sic] significantly to the deterrence of civil rights violations in the future. This deterrent effect is particularly evident in the area of individual police misconduct, where injunctive relief generally is unavailable." *Id.*, 477 U.S. at 575, 106 S.Ct. at 2694 (citation omitted); *see also Popham*, 820 F.2d at 1580.

The deterrent effect of Davis's lawsuit could well be as important as the monetary damages recovered. The line between permissible discipline and impermissible abuse is often difficult to discern in a prison setting, but legal precedents and common sense help us to draw that line when necessary. Every time a court delineates discipline from abuse, the line becomes slightly easier to see. Accordingly, we do not judge Davis's success in purely financial terms. Because the basis for the award of attorneys' fees was adequately explained in the magistrate's report and recommendation and the district court's memorandum opinion on attorneys' fees, we AFFIRM.