Willie MORRIS

v.

CITY OF ATLANTA; Calvin Carter, individually and in his former capacity as Commissioner for the Department of Aviation; and Van Dyke Walker, Jr., individually and in his official capacity as Director for Department of Aviation.

Civ. No. 1:91–CV–649–ODE.

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 28, 1993.

Ralph S. Goldberg, Atlanta, GA, for plaintiff.

Mary Janet Huber, Michael Lloyd Smith, and Bruce Patrick Johnson, Office of Atlanta City Atty., Atlanta, GA, for defendants.

## ORDER ·

**ORINDA D. EVANS, District Judge.**

This civil action (in which judgment has already been entered) is before the court on Plaintiff's motion for judgment as a matter of law ("motion for judgment"), motion for attorney's fees, and motion for additional attorney's fees. The court also must address two motions by the City of Atlanta ("City"), one for leave to file a late response to Plaintiff's motion for judgment and one for sanctions.[1]

### FACTUAL BACKGROUND

The City formerly employed Plaintiff as a store manager in the Bureau of Maintenance, a component agency of the City's Department of Aviation. On February 7, 1990, the Atlanta Police arrested Plaintiff due to his alleged theft of the City's property. At the time of his arrest, the City issued Plaintiff a Notice of Proposed Adverse Action ("Notice") that Defendants Calvin Carter ("Carter") and Van Dyke Walker, Jr. ("Walker") had signed. The Notice proposed Plaintiff's dismissal due to his alleged theft of the City's property.

Plaintiff requested an oral hearing on the charges against him. On February 13, 1990, Plaintiff, his counsel, and Carter, then Commissioner of the Department of Aviation, met to discuss Plaintiff's dismissal. They had a brief meeting which centered on the nature of the charges. However, Plaintiff's attorney did not ask and Mr. Carter did not volunteer the City's evidence against Plaintiff. On February 15, 1990, Carter signed a Notice of Final Adverse Action, an event that terminated Plaintiff's employment with the City.

The criminal case was tried in Clayton County Superior Court in August 1990. Plaintiff was found not guilty (the charge was theft of the City's property). On November 8, 1990, the Atlanta Civil Service Board ("Board") took up Plaintiff's appeal of his termination. During this hearing, the Board heard extensive testimony.[2] Plaintiff, through his attorney, introduced evidence and cross-examined Defendants' witnesses. At the conclusion of the evidence, the Board continued the hearing to consider what it had heard. On December 13, 1990, the Board, by a two-to-one vote, denied Plaintiff's appeal of his termination.

### PROCEDURAL POSTURE

Plaintiff sued Defendants under 42 U.S.C. § 1983 in March 1991. Plaintiff's complaint presented seven causes of action under § 1983: (1) a claim that Defendants violated Plaintiff's constitutionally-protected liberty interest in his occupation by releasing stigmatizing information to the press, (2) a claim that Defendants violated Plaintiff's constitutionally-protected property interest in the application of a 1986 progressive discipline ordinance by terminating him, (3) a claim that Defendants violated the ex post facto clause by applying an amended progressive discipline ordinance to him, (4) a claim that Defendants violated the constitutional guarantee of procedural due process by failing to provide Plaintiff with sufficient notice of the charges against him or with an explanation of the City's evidence against him prior to his termination, (5) a claim that Defendants violated the constitutional guarantee of procedural due process by failing to provide Plaintiff with a timely post-termination hearing, (6) a claim that Defendants violated the constitutional guarantee of substantive due process by terminating Plaintiff, and (7) a claim that Defendants violated the equal protection clause by terminating Plaintiff. Each of these federal causes of action was accompanied by a parallel state law cause of action under the applicable provision of the Georgia Constitution. As compensation for these alleged violations, Plaintiff sought reinstatement, back pay with interest, compensatory damages (including damages for mental and emotional distress), punitive damages, attorney's fees, and "for such other and further

---

1. As the discussion that follows shows, all claims against Defendants Carter and Walker in their individual capacities have been resolved in their favor. Moreover, Plaintiff's current motions do not pertain to any claim against or interest of these natural defendants.

2. An overview of the evidence is that certain property from the City supply room managed by Plaintiff was found in a storage facility behind Plaintiff's residence. Plaintiff contended this was a "set-up" by his wife, with whom he had an acrimonious relationship.

relief as is just and proper." Complaint, ¶ 28.

Plaintiff moved for summary judgment in June 1991. Defendants moved for partial summary judgment the following month. The court denied both motions in an order entered in October 1991. Shortly thereafter, Defendants filed a second motion for summary judgment. In an order entered in August 1992, the court granted in part this second motion. The court made the following findings as to each defendant:

Walker: motion granted as to all claims on the basis of qualified immunity.

Carter: motion granted as to (1) pretermination procedural due process claim on the basis of qualified immunity; (2) liberty interest and equal protection claims because Plaintiff failed to show factual dispute regarding Carter's claims that he had not violated these rights; and (3) post-termination procedural due process claim on the basis of Plaintiff's statement that he was not asserting this claim against Carter.

City: motion granted as to liberty interest, equal protection, and post-termination procedural due process claims because Plaintiff failed to show factual dispute regarding City's claims that it had not violated these rights.[3]

At a pretrial conference on May 25, 1993, Plaintiff abandoned his ex post facto clause claim against the remaining defendants. Thus, the following claims remained at issue at the time of trial:

(1) The claim that Carter and the City violated Plaintiff's constitutionally-protected property interest in the application of a 1986 progressive discipline ordinance by terminating him.

(2) The claim that the City violated the constitutional guarantee of procedural due process by failing to provide Plaintiff with sufficient notice of the charges against him or with an explanation of the City's evidence against him prior to his termination.

(3) The claim that Carter and the City violated the constitutional guarantee of substantive due process by terminating Plaintiff.

The court presided over a jury trial of Plaintiff's remaining claims on May 26–27, 1993. At the close of Plaintiff's evidence, the court granted Defendants' motion for judgment as a matter of law on the progressive discipline ordinance and substantive due process claims, but denied the motion as to the pretermination procedural due process claim.[4] At the close of the City's evidence, Plaintiff moved for a directed verdict on the remaining claim. According to Plaintiff, the evidence as a matter of law showed that, prior to Plaintiff's termination, the City failed (1) to provide Plaintiff with sufficient notice of the charges against him and (2) to explain the evidence against him.

The court expressly granted Plaintiff's motion on the evidence issue. It is necessary to review the court's comments regarding Plaintiff's motion to determine how it ruled on the notice issue:

I have been thinking about this. I looked at this notice of proposed adverse action. It was issued on February 7th. It had a proposed effective date for the termination of February 15th. The meeting [with Carter] was on the 13th. I think there is no dispute about the fact that on the 13th Mr. Morris was advised of what the four items were.

. . . .

He still had two days to come back with some evidence if he wanted to.[5] So, I'm not—it is my opinion that Mr. Morris had adequate notice to satisfy the requirements of procedural due process of what the allegedly stolen items were.

Where I'm still uncertain about what to do is this business of the requirement or the apparent requirement in the [*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985),]

---

**3.** These holdings implicitly embraced Plaintiff's analogous state law claims.

**4.** After these findings, only the City remained as a defendant.

**5.** In fact, the Notice stated that Plaintiff had until February 14 to "respond to th[e] notice in person or in writing."

case that the person who is about to be fired be given notice of the evidence against him. I don't see how—there is certainly no indication that he was formally [—] or that he was advised by the City of Atlanta [—] here is our evidence; specifically, you know, certain people went to your prior residence and looked in your tool shed on a certain date and found these things.

The foregoing language shows that the court implicitly found as a matter of law that Plaintiff had received sufficient notice of the charges against him. This conclusion is inevitable, for the court's use of the phrase "where I'm still uncertain about what to do" in the context of its preceding comments shows that the court had made a decision in the City's favor on the notice issue. Thus, the court not only denied Plaintiff's motion for judgment as a matter of law on the notice issue, but also implicitly (and *sua sponte* ) granted judgment as a matter of law to the City on the notice issue.[6]

As the foregoing analysis shows, the only claim Plaintiff prevailed on was his assertion that his procedural due process rights were violated when the City failed to explain the evidence it had in support of the charges against him. The jury's sole task was to determine the damages Plaintiff suffered due to this violation. After deliberating, the jury awarded Plaintiff damages in the amount of $157.00. The jury expressly stated that these damages were nominal in nature. On May 28, 1993, the court entered judgment on the jury's verdict.

### ANALYSIS

■ The court must first address the City's motion for leave to file an out-of-time response to Plaintiff's motion for judgment as a matter of law. Plaintiff filed his motion on June 9, 1993, while the City filed its out-of-time motion (along with its response) on July 29, 1993. The City asserts that it never received the copy of the motion which Plain-

tiff mailed to it, that it timely filed its out-of-time motion once it learned of Plaintiff's motion and received a copy of it, and that Plaintiff does not oppose the City's motion. Plaintiff has filed no pleading controverting the City's assertions. Therefore, in its discretion the court grants the City's motion for leave to file an out-of-time response to Plaintiff's motion for judgment as a matter of law.

■ In its entirety, Plaintiff's combined motion and brief for judgment as a matter of law reads as follows:

COMES NOW plaintiff and moves for judgment jnov against the City of Atlanta in so far as plaintiff received no notice of the charges prior to the meeting with Calvin Carter. *See Ferguson v. Thomas,* 430 F.2d 852 (5th Cir.1970).[7]

In *Ferguson,* the defendant called the plaintiff to a meeting where the defendant gave the plaintiff a document containing fifteen "guidelines" that detailed allegedly-deficient conduct on the plaintiff's part. *Id.,* 430 F.2d at 854. In this case, the court found that Plaintiff did not receive adequate notice of the charges against him until a meeting with Carter on February 13, 1990. Given this finding, Plaintiff apparently relies on the following passage from *Ferguson:*

The opportunity that Dr. Ferguson was given to speak in opposition to this document was not a fair opportunity. The "guidelines" had not been served on him until his arrival at the meeting; this fell short of according him a reasonable opportunity to voice his dissent and opposition.

*Id.,* 430 F.2d at 857. At first glance, *Ferguson* appears to compel the relief that Plaintiff seeks. However, Plaintiff's argument ignores the fact that his meeting with Carter was not the last opportunity he had to respond to the charges against him.

In *Loudermill,* the Supreme Court held that prior to termination

---

6. This conclusion is borne out by the fact that the court sent the case to the jury solely for the purpose of determining Plaintiff's damages for the City's failure to inform him of the evidence it had against him.

7. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.... To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Id.*, 470 U.S. at 546, 105 S.Ct. at 1495. In determining whether the City complied with *Loudermill,* the court notes that "the standards of procedural due process are not wooden absolutes. The sufficiency of procedures employed in any particular situation must be judged in the light of the parties, the subject matter and the circumstances involved." *Ferguson,* 430 F.2d at 856.

As *Ferguson* points out, the court must consider the "circumstances involved" to determine whether Plaintiff received the minimum elements of constitutional due process. The court notes that Plaintiff knew as early as February 7, 1990 that he was accused of taking unspecified items of property which belonged to the City. At some point before February 13, Plaintiff secured the services of a lawyer, and that lawyer attended Plaintiff's meeting with Carter on February 13. Since Plaintiff received adequate notice of the charges against him during (not after) this meeting, he had the opportunity "to respond orally before the official charged with the responsibility [for] making the termination decision." *Cf. Thurston v. Dekle,* 531 F.2d 1264, 1273 (5th Cir.1976), *vacated on other grounds,* 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978) (footnote omitted). Moreover, the court finds that one day was sufficient to give Plaintiff a reasonable chance to rebut the charges in writing, for he had retained a lawyer who in that period of time presumably could have either drafted a rebuttal or requested an extension of the deadline for responding. *Cf. id.* Given the foregoing facts, the court will not disturb its prior finding that the notice Plaintiff ultimately received before his termination satisfied constitutional requirements.

Moving to Plaintiff's request for attorney's fees, the court notes that in its discretion it may allow attorney's fees to a "prevailing party" in a § 1983 action. 42 U.S.C. § 1988(b). A plaintiff can be said to prevail "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby,* 506 U.S. ——, ——, 113 S.Ct. 566, 569, 121 L.Ed.2d 494, 503 (1992).[8] "A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Id.* at ——, 113 S.Ct. at 574, 121 L.Ed.2d at 504. Therefore, "a plaintiff who wins nominal damages is a prevailing party under § 1988." *Id.*

"Although the 'technical' nature of a nominal damages award ... does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988." *Id.* at ——, 113 S.Ct. at 574, 121 L.Ed.2d at 505. "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Id.* (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)). The Supreme Court expounded on this point as follows:

We have already observed that if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." ... "Where recovery of private damages is the purpose of ... civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." ... Having considered the amount and nature of damages awarded, the court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness, ... or multiplying "the number of

**8.** As the analysis that follows shows, the court has found it necessary to quote at length from the Supreme Court's recent opinion in *Farrar,* for that decision marks a sea change in the considerations that govern the awarding of attorney's fees in cases such as this.

hours reasonably expended ... by a reasonable hourly rate[.]"

*Farrar*, at ——, 113 S.Ct. at 574–75, 121 L.Ed.2d at 505 (citations omitted) (some ellipses in original).

The foregoing passage from *Farrar* plainly indicates that a plaintiff seeking substantial monetary compensation who in fact receives only nominal damages is not automatically entitled to an award of attorney's fees. Nevertheless, Plaintiff, who seeks $37,406.25 in attorney's fees on a $157.00 judgment, argues that the Supreme Court's words in *Farrar* are far less clear than they appear to be. Plaintiff's argument for attorney's fees is not new, for it is founded on the truism that "a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards." *Riverside v. Rivera*, 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986) (plurality opinion). This truism has been the basis for the Eleventh Circuit's affirmance of district court decisions awarding large amounts of attorney's fees where the underlying judgment was relatively small. *E.g., McKenzie v. Cooper, Levins & Pastko, Inc.,* 990 F.2d 1183, 1185 & n. 4 (11th Cir.1993) ($98,810.50 in attorney's fees on judgment ordering reinstatement and backpay of $8,618.10); *Davis v. Locke,* 936 F.2d 1208, 1215 (11th Cir.1991) ($62,643.20 in attorney's fees on $3,500.00 judgment).[9] However, the court finds that *Farrar* provides countervailing considerations which substantially limit the reach that the *Rivera* truism formerly had in deliberations regarding attorney's fees.

*Farrar* implicitly recognizes that there are degrees of severity even in the realm of constitutional torts:

> In some circumstances, even a plaintiff who formally "prevails" under § 1988 should receive no attorney's fees at all. A plaintiff who seeks compensatory damages but [who] receives no more than nominal damages is often such a prevailing party. As we have held, a nominal damages award does render a plaintiff a prevailing party by allowing him to vindicate his "absolute" right to procedural due process through enforcement of a judgment against the defendant.... In a civil rights suit for damages, however, the awarding of nominal damages also highlights the plaintiff's failure to prove actual, compensable injury.... *When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, ... the only reasonable fee is usually no fee at all.*

*Id.* —— U.S. at ——, 113 S.Ct. at 575, 121 L.Ed.2d at 506 (citations omitted) (emphasis added). *Farrar* thus stands for the proposition that a nominal or small damages award *alone* (i.e., with no accompanying award of attorney's fees) in most cases completely vindicates less-severe constitutional violations.[10]

█ Whether an award of attorney's fees is warranted when a plaintiff receives only a nominal or small damages award turns on whether the plaintiff has gained more than a "technical or de minimis" victory. *Id.* at ——, 113 S.Ct. at 576, 121 L.Ed.2d at 507 (O'Connor, J., concurring) ("[T]he Court properly holds that, when a plaintiff's victory is purely technical or de minimis, a district court need not go through the usual complex-

---

**9.** The Supreme Court issued its opinion in *Farrar* in December 1992. Nevertheless, *McKenzie*, which the Eleventh Circuit issued in May 1993, does not mention *Farrar*.

**10.** In *Garner v. Wal-Mart Stores, Inc.,* 807 F.2d 1536 (11th Cir.1987), the Court stated that

> Garner lost no back wages or benefits as a result of her one-day demotion[;] however, Garner is entitled to nominal damages in recognition of her success on the sexual discrimination issue in this case.... Therefore, since Garner is the "prevailing party" on this issue of sexual discrimination she is *entitled* to an award of attorney's fees on this issue.

*Id.,* 807 F.2d at 1539 (citation omitted) (emphasis added); *cf. Ruffin v. Great Dane Trailers,* 969 F.2d 989, 994 n. 3 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1257, 122 L.Ed.2d 655 (1993) (citing *Garner* ) ("Several circuits, including this one, have held that an award of nominal damages, without more, suffices as a basis for an award of attorney's fees under 42 U.S.C. § 1988."). The court finds that *Farrar* overrules *Garner* to the extent that it can be read to *require* an award of attorney's fees even though the plaintiff receives only nominal damages.

ities involved in calculating attorney's fees.").[11]

Justice O'Connor suggested that there are three factors courts should consider when determining whether a victory is de minimis or otherwise strictly technical: first, the difference between the judgment recovered and the recovery sought; second, the significance of the legal issue on which the plaintiff prevailed; and third, the public purpose served by the litigation.

*Cartwright v. Stamper*, 7 F.3d 106, 109 (7th Cir.1993) (citing *Farrar*, —— U.S. at ——, 113 S.Ct. at 576, 121 L.Ed.2d at 509–10 (O'Connor, J., concurring)).

[If] a plaintiff's victory is purely technical or de minimis, a district court need not go through the usual complexities involved in calculating attorney's fees.... Instead, it is enough for a court to explain why the victory is de minimis and announce a sensible decision to "award low fees or no fees" at all.

*Farrar*, at ——, 113 S.Ct. at 576, 121 L.Ed.2d at 507 (citing and quoting majority opinion in *Farrar*).

There is a major difference between the relief Plaintiff sought and what he recovered. Excluding attorney's fees, he sought reinstatement, back pay with interest, compensatory damages (including damages for mental and emotional distress), punitive damages, and "for such other and further relief as is just and proper." He received $157.00. *Cf. Farrar*, at ——, 113 S.Ct. at 578, 121 L.Ed.2d at 509 ("[Farrar] asked for a bundle and got a pittance [i.e., one dollar received out of seventeen million dollars requested]. While we hold today that this pittance is enough to render him a prevailing party, ... it does not by itself prevent his victory from being purely technical.") and *Popham v. City of Kennesaw*, 820 F.2d 1570, 1580 (11th Cir. 1987) ("Th[e] holding [in *Rivera*] does not foreclose a court from comparing the amount of damages a plaintiff requested with the amount of damages he received in determining the degree of that plaintiff's success.").

Within the context of constitutional torts, the court cannot find that the legal issue on which Plaintiff prevailed had much significance. It is clear that the City made a good faith effort to satisfy the requirements of due process in connection with its proposal that Plaintiff be terminated; before terminating him, it gave him notice of the charges against him and gave him a face-to-face hearing before the official responsible for the termination decision, and afforded him the opportunity for a further response after the hearing. Plaintiff's only success was in securing a finding that the City failed sufficiently to inform him of the evidence it had against him regarding his alleged wrongdoing. This is a far cry from the plaintiff in *Davis*, who secured a finding that two prison guards caused him to drop head first from the back of a pickup truck while his hands were shackled, *id.*, 936 F.2d at 1211, or the plaintiff in *McKenzie*, who secured a finding that her employer had discharged her because of her sex, *id.*, 990 F.2d at 1184.

Finally, the court notes that "[t]he more important the right at stake and the more egregious the violation the more likely it is that the victory serves a public purpose. An award of punitive damages, therefore, is strong evidence that the victory served a public purpose." *Cartwright*, 7 F.3d at 110 (citations omitted). The right of an employee threatened with termination to know the details of the evidence against him that his or employer possesses is undeniably important. However, it may not be as important as the right to be free from unjustifiable physical injury at the hands of state actors, *cf. Davis, supra*, or the right not to be discriminated against because of one's gender, *cf. McKenzie, supra*. Moreover, the jury's failure to award punitive damages to Plaintiff shows that it did not find the City's lapse to be an egregious violation of Plaintiff's right to have the evidence. Therefore, the court cannot say that Plaintiff's victory served much of a public purpose.

Based on the foregoing analysis, the court finds that Plaintiff's victory was de minimis. "When a plaintiff recovers only nominal dam-

**11.** Justice Thomas wrote the majority opinion in *Farrar*, while Justice O'Connor was one of the four justices who joined with him to create the majority.

ages because of his failure to prove an essential element of his claim for monetary relief, ... the only reasonable fee is usually no fee at all." *Farrar*, — U.S. at ——, 113 S.Ct. at 575, 121 L.Ed.2d at 506. There is nothing unusual or exceptional about this case that would justify the award of attorney's fees. Therefore, Plaintiff's motion for attorney's fees is denied. Plaintiff's motion for additional attorney's fees is also denied based on the foregoing analysis.

The City's motion for sanctions arises from Plaintiff's motion for judgment as a matter of law on the notice issue. In its three-page brief, the City asserts with little elaboration that Plaintiff's motion had no factual basis, was based upon a legal theory with no reasonable chance of success, and was made in bad faith and for an improper purpose. Though the court finds Plaintiff's motion for judgment as a matter of law to be without merit, the motion cannot be said to be objectively unreasonable. *See Pelletier v. Zweifel*, 921 F.2d 1465, 1514 (11th Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991). Therefore, the City's motion for sanctions is denied.

### CONCLUSION

Accordingly, the City of Atlanta's motion for leave to file an out-of-time response to Plaintiff's motion for judgment as a matter of law [# 53–1] is GRANTED, while its motion for sanctions [# 54–1] is DENIED. Plaintiff's motion for judgment as a matter of law [# 47–1], motion for attorney's fees [# 48–1], and motion for additional attorney's fees [# 56–1] are DENIED.

SO ORDERED.