Thomas Wesley HARRIS,
Plaintiff-Appellee,

v.

B. J. CHANCLOR et al.,
Defendants-Appellants.

No. 75–2237.

United States Court of Appeals,
Fifth Circuit.

Aug. 19, 1976.

Wallace E. Harrell, Brunswick, Ga., for defendants-appellants.

Wm. T. Elsey, Cartersville, Ga., for plaintiff-appellee.

Before GODBOLD, McCREE* and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

As a result of an assault he suffered in the Glynn County Jail in Brunswick, Georgia, plaintiff Thomas Harris filed this damage action under 42 U.S.C. § 1983 in the United States District Court for the Southern District of Georgia. Named as defendants were Ralph Moore, the jailer, police officer B. J. Chanclor, who administered the assault, the police chief who hired Chanclor, the sheriff who was in charge of the jail, and the county commissioners. The case went to trial, and the jury returned a $12,-000.00 verdict against Chanclor and Moore but discharged the other defendants from all liability. On appeal Moore challenges the sufficiency of the evidence and the trial court's refusal to charge the jury that he would not be liable for mere negligence, while Chanclor attacks the trial judge's denial of his motion for a new trial. We reject the arguments of both appellants and affirm.

I

In order to evaluate Moore's contentions it is necessary initially to review the complaint, then the evidence. The complaint alleges that on October 14, 1972, at approximately 2:00 A.M. Chanclor arrested the plaintiff and transported him to the jail where an argument ensued between the plaintiff and defendants Chanclor and Moore as to what charges, if any, would be lodged against him. When the plaintiff requested permission to make a telephone call, Chanclor attacked him with a blackjack and beat him about the head. The plaintiff fell to the floor, but Chanclor continued to beat him until another officer

* Of the Sixth Circuit, sitting by designation.

pulled him off. Immediately thereafter, the complaint charges, Moore, who had witnessed the beating, proceeded to place the plaintiff in a cell, and, although the plaintiff was seriously injured and bleeding profusely, Moore denied his repeated requests to contact a lawyer, to get a doctor, to telephone his relatives, or otherwise to seek assistance. Moore left the plaintiff incarcerated in the cell for approximately eight to ten hours before releasing him to his wife. As a result of his injuries, plaintiff was out of work for over six weeks, and his wife lost three weeks of work caring for him. The complaint concludes by charging Chanclor with the assault and Moore for his "active failure to prevent the vicious beating . . . and . . . failure to obtain and cause to be administered medical attention for his serious injuries."

The allegations of the complaint were borne out in the evidence, most of it uncontradicted. It is undisputed that Chanclor arrested the plaintiff in the early morning hours and escorted him to the Brunswick jail. It is also undisputed that the alleged argument developed while the plaintiff was being booked by Moore. There are, however, conflicting versions of how the fight erupted and how badly the plaintiff was injured. The jury verdict against Chanclor indicates, though, that, in so far as there are conflicts between Chanclor's and the plaintiff's version of the facts, the jury believed the plaintiff. According to plaintiff's testimony Chanclor viciously assaulted him with a blackjack. The beating continued even after he had fallen to the floor and was only stopped when another officer pulled Chanclor off. Everyone agrees that these events occurred in Moore's presence and that he did not attempt to intervene in any way.

There is a conflict in the testimony as to how visibly injured the plaintiff was after the beating; however, there was testimony that he was seriously injured and bleeding profusely. It is undisputed, moreover, that Moore escorted the plaintiff to an unclean cell which had no water or toilet facilities or even a bed, but only an old piece of foam rubber lying on the floor. Moore contradicted the plaintiff's testimony that he "begged" for a doctor, but Moore readily admitted that he denied the plaintiff's repeated requests for medical assistance.

The next morning Moore was relieved by one Ernest Dykes. After talking with the plaintiff, Dykes telephoned plaintiff's wife, who transported her husband from the jail to a doctor. Medical testimony indicated that plaintiff suffered a broken nose, a large head laceration, and cuts on the arms and legs. The head wounds became infected, and plastic surgery was necessary to reconstruct the nose. Plaintiff's claims for lost wages were not rebutted.

## II

The main thrust of Moore's argument is that the district judge erred in submitting a negligence instruction to the jury. Moore claims that the charge that was given permitted the jury to find him liable for the plaintiff's injuries if they found those injuries were caused by "mere negligence" on Moore's part. Such a charge, it is urged, greatly expands the section 1983 liability of jailers, who heretofore have only been held liable for failing to provide adequate medical care where they have willfully refused to treat a severe and obvious ailment. *See, e. g., Coleman v. Johnston,* 247 F.2d 273 (7th Cir. 1957); *Hughes v. Noble,* 295 F.2d 495 (5th Cir. 1961); *Church v. Hegstrom,* 416 F.2d 449 (2d Cir. 1969); *Martinez v. Mancusi,* 443 F.2d 921 (2d Cir. 1970), *cert. denied,* 401 U.S. 983, 91 S.Ct. 1202, 28 L.Ed.2d 335 (1971). Moore contends that these cases entitled him to an instruction which stated he would only be liable if he had "willfully or culpably denied the plaintiff [medical attention] under such circumstances that it would shock the conscience of ordinarily reasonable people" and that "a good faith error in judgment" amounting to "mere negligence" would not support a verdict.

We find it unnecessary to determine whether Moore was entitled to such an in-

struction.[1] It is well established that a warden's deliberate indifference to an inmate's severe and obvious injuries is tantamount to an intentional infliction of cruel and unusual punishment. *Martinez v. Mancusi, supra.* It has also been held that a supervisory officer is liable under § 1983 if he refuses to intervene where his subordinates are beating an inmate in his presence. *Byrd v. Brishke,* 466 F.2d 6 (7th Cir. 1972); *Davidson v. Dixon,* 386 F.Supp. 482 (D.Del. 1974), *aff'd,* 529 F.2d 511 (3d Cir. 1975). Here the jury verdict against Chanclor establishes that the plaintiff was in fact viciously beaten in violation of his Eighth Amendment rights. Moore's admission that this occurred in his presence, without objection or intervention, and that he thereafter made no effort to obtain medical assistance established as a matter of law the necessary intent under the rationale of these cases. Consequently, any error in the instructions on the issue of Moore's *intent* was harmless, for the only factual issue was the severity of the beating, and this issue was resolved under proper instructions.

### III

 Chanclor argues that he should be given a new trial because he was unfairly prejudiced by certain questions which plaintiff's counsel asked him and other officers and the answers to those questions. The first such question was put to Chanclor on

cross-examination when he was asked if he had ever shot a man. Chanclor answered affirmatively, and his attorney objected. After an argument which was largely out of the presence of the jury, the objection was sustained. Chanclor also objected to a question asked of the defendant police chief, Atlas Lokey, who was sued for negligence in hiring and retaining Chanclor, as to whether he had received complaints about Chanclor. The objection was overruled, and Lokey answered that he had received complaints but could not remember the specifics of them. The other questions Chanclor objected to were those addressed to fellow officers as to their opinion of Chanclor's competence as a police officer. One officer said that Chanclor was "quick tempered", and another said he was "very brutal." These four questions and answers, it is urged, were immaterial, highly prejudicial and inflammatory, and entitled Chanclor to a new trial.

In rejecting these arguments the trial judge noted that all four questions related to the plaintiff's negligence claim against Lokey[2] rather than the action against Chanclor and that defense counsel had conceded at the beginning of the trial that evidence of Chanclor's propensity or reputation for violence was admissible against Lokey.[3] Appellant's real complaint, therefore, is not that he was prejudiced by improper questions and inadmissible testimony but that he was prejudiced by being tried with

---

1. It should be noted that the entire trial record is before the court with the exception of matters excluded with the consent of both parties, and none of the excluded matters bear on jury instructions. Nowhere in the record is there a transcript of a charge conference, and nowhere is there a single request for instructions by either party. Thus we are not reviewing the refusal to give the instruction for which the defendant now argues. *See* Fed.R.Civ.P. 51. Moore's only recorded objection to jury instructions was voiced at the conclusion of the court's charge before the jury retired. At that time he merely objected that the instruction would permit a verdict against him predicated on "simple negligence." This objection was insufficient to preserve all the issues posed by the proposed jury instruction which was submitted for the first time in his appellate brief.

2. Lokey was sued under section 1983 for negligence in hiring and maintaining Chanclor on the force. As the jury verdict discharged Lokey of any liability, we express no view on whether such negligence gives rise to a cause of action under the Civil Rights Act.

3. All the defendants were represented at trial by the same attorney. He stated during the trial that " . . . the issue in this case is the propensity for violence of both parties . . .;" that " . . . the violent propensity that [Chanclor] may have is a proper element of inquiry;" and, that " . . . any evidence of existence of general reputation which tends to establish such character is admissible." We express no view on these evidentiary points, but merely state that these concessions were made by defense counsel.

Lokey. The trial court correctly observed that, having failed to press a pretrial motion for severance,[4] Chanclor was in no position to complain of such prejudice after verdict. In addition, the trial judge concluded in light of all the circumstances that there was nothing "indicating gross injustice which would require the Court to disturb the jury's verdict."

This circuit has long recognized that a motion for a new trial under Fed.R.Civ.P. 59 is addressed to the sound discretion of the trial court "and its ruling thereon will not be reviewed in an appellate court in the absence of a clear abuse of discretion." *United States ex rel. Weyerhaeuser Co. v. Bucon Construction Co.,* 430 F.2d 420, 423 (5th Cir. 1970). We have also noted that, where the trial judge has decided to deny the motion and not to disturb the jury's determination, all the factors underlying the review of a ruling on a new trial motion press in the direction of leaving the trial judge's ruling undisturbed. *Massey v. Gulf Oil Corp.,* 508 F.2d 92, 95 (5th Cir. 1975). In this case we agree with the district judge that Chanclor's failure to make any effort to obtain a severance precludes him now from complaining of the prejudice that he claims resulted from the joint trial. Thus, we find nothing in the denial of the new trial motion that could possibly rise to the level of an abuse of the discretion vested in the district court under Rule 59. AFFIRMED.