[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 29, 2002
THOMAS K. KAHN
CLERK

No.  00-15959

_____

D.C. Docket No.  99-00742 CV-J-21B

DAVID C. SKRTICH,

Plaintiff-Appellee,

versus

TIMOTHY ALVIN THORNTON, in his individual capacity,
JASON PATRICK GRIFFIS, in his individual capacity, et al.,

Defendants-Appellants.

_____

Appeals from the United States District Court for the
Middle District of Florida

_____

**(January 29, 2002)**

Before BLACK and BARKETT, Circuit Judges, and HOBBS[*], District Judge.

_____

[*]Honorable Truman M. Hobbs, U.S. District Judge for the Middle District of Alabama, sitting
by designation.

BARKETT, Circuit Judge:

On our own motion, we vacated the original opinion in this case, <u>Skrtich v. Thornton</u>, 267 F.3d 1251 (11th Cir. 2001), and now substitute the following opinion.

In this interlocutory appeal, Willie Archie, James E. Dean, Stacey L. Green, and Tony Anderson, all Florida State Corrections Officers, appeal the denial of their motion for summary judgment based on qualified immunity. David C. Skrtich sued the officers under 42 U.S.C. § 1983 alleging a violation of his Eighth and Fourteenth Amendment rights when he was subjected to an excessive and unjustified use of force while incarcerated at Florida State Prison. In addition, Timothy A. Thornton and Jason P. Griffis, both Florida State Corrections Officers, appeal the denial of their motion to dismiss based on qualified immunity in the same action.

## DISCUSSION

### I. Denial of Summary Judgment to Anderson, Archie, Dean and Green.

We review <u>de novo</u> a district court's ruling on summary judgment, applying the same legal standards as the district court. <u>See</u> <u>Whatley v. CNA Ins. Cos.</u>, 189 F.3d 1310, 1313 (11th Cir. 1999). Summary judgment is appropriate only when the evidence before the court demonstrates that "there is no genuine issue of

2

material fact and that the moving party is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c). The evidence must be viewed in the light most favorable to the non-moving party. Augusta Iron and Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir.1988). On review of a district court's denial of summary judgment, the Court considers the pleadings, depositions, affidavits, answers to interrogatories and admissions together with the affidavits if any, and views those facts in the light most favorable to the non-moving party. The only evidence before the judge on summary judgment was the deposition of Skrtich and Skrtich's prison and medical records. Based thereupon, the undisputed facts in the record, viewed in the light most favorable to Skrtich, indicate the following. On January 13, 1998, Skrtich was incarcerated at Florida State Prison when officers Anderson, Thornton, Griffis, Archie, Dean and Green were called to Skrtich's cell to perform a "cell extraction" because he had refused to vacate his cell so it could be searched. Skrtich was on "close management status" due to his history of disciplinary problems. The prison records set out his disciplinary problems, which include a conviction for aggravated assault with a deadly weapon for repeatedly stabbing a prison guard. Skrtich had been subject to several cell extractions in the past. Griffis, Archie, Dean and Green arrived at Skrtich's cell wearing riot gear. At Thornton's direction, Griffis entered Skrtich's cell and used an electronic shield

3

to shock Skrtich, knocking him to the floor. According to Skrtich's deposition, after the electric shock was administered, he was knocked into the wall and fell to the floor. Skrtich states that, once on the floor, he offered no physical resistance, and Griffis, Archie and Dean kicked him repeatedly in the back, ribs and side, and Green struck him with his fists. Three times, after falling, Skrtich was lifted onto his knees and the beating continued each time. Thornton and Anderson watched and did nothing to stop the beating. At some point, Thornton verbally threatened Skrtich and actively participated in the assault by knocking Skrtich to the ground several times after the other officers picked him up, and by slamming his head into the wall.[1]

As a result of his injuries, Skrtich had to be airlifted by helicopter to a hospital, where he remained for nine days and was treated for extensive injuries and spent several months recuperating. The medical records, which are not contested, reflect that Skrtich was "the victim of a significant amount of force," which resulted in (1) left chest trauma with multiple fractures to the left ribs and left hemopneumothorax, (2) back injury with fractured multiple transverse

---

[1] Skrtich alleged in his complaint that Thornton directed Griffis, Archie, Dean and Green to enter Skrtich's cell and that Thornton and Anderson "acquiesced in and took no action to stop their subordinates from punching and kicking the plaintiff." In his deposition, Skrtich additionally testified that Thornton verbally threatened him and repeatedly knocked him down after he was lifted up by the officers, and slammed his head into the wall.

processes, (3) right scalp laceration, (4) left shoulder and right knee injury, (5) abdominal trauma, and (6) post trauma anemia.[2]  The records further note that Skrtich's chest "[r]evealed the presence of an extensive amount of injuries with multiple abrasions and contusions and several markings of shoes on his back and left chest."[3]  Dr. Victor Selyutin of Florida State Prison as well as Dr. W. F. Mathews reported "that the shoe impressions on inmate Skrtich were probably made from a stomping motion as opposed to merely holding him down."[4]  Dr. Selyutin further told the Inspector General that, in his opinion, Mr. Skrtich's injuries were consistent with "physical abuse."[5]

Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm."  Whitley v. Albers, 475 U.S. 312, 320-21 (1986) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)); see also Hudson v. McMillian, 503 U.S. 1, 8 (1992).  To determine if an application of force was applied maliciously and sadistically to

---

[2]  R-62, Exhibit A, Discharge Summary of Dr. O. Contarini, M.D.

[3]  R-62, Exhibit B, Physical History and Examination by Dr. Contarini.

[4]  R-62, Exhibit C, Case Notes of Keith Adams, Correctional Officer Senior Inspector, Office of the Inspector General.

[5]  R-62, Exhibit D, Case Diary and Work Record of Keith Adams, Correctional Officer Senior Inspector, Office of the Inspector General.

cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Hudson, at 7-8; see also Whitley, 475 U.S. at 321; Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Whitley, 475 U.S. at 321 (quoting Johnson, 481 F.2d at 1033). Moreover, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance. See Post v. City of Fort Lauderdale, 7 F.3d 1552, 1560 (11th Cir.1993), as amended, 14 F.3d 583 (11th Cir.1994) ("A police officer has a duty to intervene when another officer uses excessive force."); Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir.1986) ("if a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983"); Fundiller v. City of Cooper City, 777 F.2d 1436, 1442 (11th Cir.1985) ("an officer who is present at the scene and

6

who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance"); Harris v. Chanclor, 537 F.2d 203, 206 (5th Cir.1976)[6] ("a supervisory officer is liable under [Section] 1983 if he refuses to intervene where his subordinates are beating an inmate in his presence").

In this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force "maliciously and sadistically to cause harm" is clearly established to be a violation of the Constitution by the Supreme Court decisions in Hudson and Whitley. See Johnson v. Breeden, __ F.3d __ (11th Cir. 2002). There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation. Id. The only question, then, is whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment. If he has done so, that is the end of the inquiry. Accordingly, we consider whether Skrtich's allegations make out a violation of his Eighth Amendment rights.

The defendants argue that force was necessary in this case because Skrtich was uncooperative and refused to comply with orders to submit to standard

---

[6] In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

7

handcuffing procedure. They also argue that they had reason to be especially wary in their interactions with Skrtich given his "close-management status," a status reserved for prisoners with disciplinary problems.[7] Defendants argue that, given the context of Skrtich's history, they reasonably believed the use of force to be necessary to maintain order in the prison.

Skrtich does not challenge the officers' use of the electronic shield, which knocked him to the ground; he concedes that some degree of force was lawful in light of his noncompliance with the officers' order to submit to handcuffing so that the officers could search his cell. Skrtich only challenges the assault that occurred after he had been incapacitated by the shock of the electronic shield. While Skrtich's history may have warranted extra precautions in performing the cell extraction, the evidence, viewed in the light most favorable to Skrtich, is that once he was shocked with the shield, he was incapacitated. It is not constitutionally permissible for officers to administer a beating as punishment for a prisoner's past misconduct.

---

[7] The defendant-officers also point to numerous specific incidents of Skrtich's past violent confrontations with prison guards. An officer's knowledge of such evidence may be relevant to the assessment of the degree of force that a reasonable officer would have believed was necessary. However, defendants have offered no evidence that they knew of these violent incidents. Moreover, such knowledge would hardly cause a reasonable officer to believe that the extensive injuries inflicted on this prisoner were necessary to maintain good order and discipline, thus insulating him from a constitutional violation.

We also find meritless and summarily reject appellants' argument that a "de minimis" use of force does not support a claim of excessive force. Harris v. Chapman, 97 F.3d at 505 (citing Hudson, 503 U.S. at 7-8). Although a de minimis use of force cannot support a claim for excessive use of force, the kind of injuries Skrtich suffered, which is one factor to consider in determining the excessiveness of the force used, see Hudson, 503 U.S. at 7, included multiple rib fractures, back injuries, lacerations to the scalp, and abdominal injuries requiring hospitalization for nine days and rehabilitation for months and could hardly be the result of a de minimis application of force. Moreover, we reject the argument that the force administered by each defendant in this collective beating must be analyzed separately to determine which of the defendants' blows, if any, used excessive force. The evidence, viewed in the light most favorable to Skrtich, is that the cell extraction team, including Archie, Dean and Green, acted in concert to administer the beating while Anderson and Thornton watched from outside the cell. Thornton at some point also took part in it. This beating resulted in undisputably severe injuries requiring Skrtich to be flown to a hospital. "It is not necessary that a police officer actually participate in the use of excessive force in order to be held liable under section 1983. Rather, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of

9

excessive force, can be held liable for his nonfeasance." Fundiller v. City of Cooper City, 777 F.2d 1436, 1441-42 (11th Cir. 1985) (finding that arrestee had stated a claim for relief for unlawful use of force against officers who, instead of rendering aid to a suspect who had been shot five times by an officer, dragged suspect from his car, placed him face down on the ground, and shackled his hands behind him, exacerbating his wounds).

The undisputed evidence in this record reflected that Skrtich had been electrically shocked to render him unable to resist, and then kicked, punched and beaten. In the absence of any evidence that any force, much less the force alleged here, was necessary to maintain order or restore discipline, it is clear that Skrtich's Eighth Amendment rights were violated.

Having determined that the officers' alleged beating violated Skrtich's Eighth Amendment rights, we conclude that no qualified immunity defense was available to the officers, and therefore find that the district court did not err in denying their motion for summary judgment. Because the district court in this case undertook a separate qualified immunity analysis, however, we also note that we find no error in its reasoning. Qualified immunity protects government officials acting within their discretionary functions from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional

10

rights that a reasonable person would have known. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982); <u>Rogers v. Miller</u>, 57 F.3d 986, 988 (11th Cir.1995). There is no dispute that the appellants were acting within the scope of their discretionary authority; thus, the only question is whether the appellants' alleged actions violated clearly established constitutional law. <u>Rich v. Dollar</u>, 841 F.2d 1558, 1563-64 (11th Cir.1988). In determining whether qualified immunity bars a plaintiff's claim, we do not look at the subjective intent of the defendants. Rather, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier</u>, 121 S.Ct. at 2156.

The question for qualified immunity analysis is whether, at the time of the incident, it was clearly established that it is unlawful to inflict a beating upon a prisoner in custody when he is incapacitated and no longer able to pose a threat to the guards' ability to maintain order, resist the guards' directions, or engage in disruptive behavior. We answer that question in the affirmative. By 1998, our precedent clearly established that government officials may not use gratuitous force against a prisoner who has been already subdued or, as in this case, incapacitated. <u>See</u> <u>Harris v. Chapman</u>, 97 F.3d 499, 505-06 (11th Cir. 1996); <u>Davis v. Locke</u>, 936 F.2d 1208, 1212-13 (11th Cir. 1991); <u>Williams v. Cash-</u>

11

C.O.I., 836 F.2d 1318, 1320 (1988); Perry v. Thompson, 786 F.2d 1093 (11th Cir.

1986). These cases contained facts very similar to the facts presented in this case

on the unlawful infliction of force on nonresisting prisoners.[8] The circumstances

---

[8] In Harris, a prisoner who refused to voluntarily submit to a haircut was forcibly removed from his cell and restrained while officers attempted to cut his hair. He resisted and threatened to kill the barber. The evidence showed that the officers as a group kicked and beat the inmate, and that the sixth officer specifically snapped his head back with a towel, slapped him in the face, and harassed him with several racial epithets and other taunts, causing injuries to his back. We reversed the district court's grant of judgment as a matter of law in favor of the officer, finding that the evidence supported the jury finding that the sixth officer's conduct constituted an "unnecessary and wanton infliction of pain" in violation of the Eighth Amendment and the jury's award of punitive damages against the sixth officer. 97 F.3d at 505-06.

In Davis, an inmate, after attempting to escape, was recaptured and confined in a dog cage in the back of a truck with his hands shackled behind his back. He was then grabbed by his ankles and pulled from the cage and in the process landed on his head because his hands were shackled behind his back, causing him to suffer severe psychological injuries. The jury awarded punitive damages against the correctional officers. This Court affirmed, finding that where the inmate had been recaptured after his escape and confined in a dog cage with his hands shackled behind his back, the ongoing violation of escape had been terminated and a jury could reasonably conclude that he posed no continuing threat to the guards. 936 F.2d at 1213 ( "[T]he law of this circuit prohibited the unjustified use of excessive force by a prison guard against an inmate. The evidence supports a conclusion that Davis posed no continuing threat to [the officers] after he was recaptured . . . .") (citations omitted).

In Williams, a prisoner refused to comply with a prison guard's order to return to his cell. The prisoner alleged that after he was subdued, the prison guard purposely broke his arm. The defendants presented evidence that the prisoner's arm was broken during the struggle to return the prisoner to his cell. This Court held that summary judgment was not appropriate where the prisoner alleged that the guard purposely broke his arm after he had ceased to resist. 836 F.2d at 1320.

Finally, in Perry, a prisoner alleged that prison guards took him to a prison barber shop to have him shaved with a razor, that he was in waist chains and his hands were cuffed in front of him, and that the prison officers struck him in the face, head, shoulder, arms and legs and that while he was down on the floor they kicked him in the sides, ribs, back and head. The officers presented evidence that the prisoner had been shaved with a clipper without incident and that prisoner's medical records showed no complaint of injury on the day of the alleged beating. The district court dismissed the plaintiff's Section 1983 claim and granted summary judgment in favor of the officers. This Court reversed, finding a "square, head-on dispute of material facts." 786 F.2d at 1095.

facing the prison guards, specifically, a non-compliant inmate who had been restrained by the guards and no longer posed a threat, were enough like the facts in precedent that no reasonable, similarly situated official could believe that the factual differences between this line of precedent and the circumstances here might make a difference to the conclusion about whether the official's conduct was lawful and we find no merit to the defendant officers' arguments claiming entitlement to qualified immunity.

The defendant-officers contend that because there is no case addressing excessive force used *in the context of a cell extraction,* prison guards are completely insulated from federal liability for any and all excessive force used in cell extractions. The fact that the beating took place in the context of a cell extraction does not materially distinguish this case from our precedent. The facts, viewed in the light most favorable to Skrtich, demonstrate that Skrtich was incapacitated by the shock from the electronic shield. The argument that beating a prisoner for noncompliance with a guard's orders after the prisoner had ceased to disobey or resist turns the "clearly established law" of excessive force on its head and changes the purpose of qualified immunity in excessive force cases from one of protection for the legitimate use of force into a shield for clearly illegal conduct. The law of excessive force in this country is that a prisoner cannot be subjected to

13

gratuitous or disproportionate force that has no object but to inflict pain.  Whitley,

475 U.S. at 320-21.  This is so whether the prisoner is in a cell, prison yard, police

car, in handcuffs on the side of the road, or in any other custodial setting.[9]  The use

of force must stop when the need for it to maintain or restore discipline no longer

exists.  Id.  Long before the defendants acted, the law was clearly established that

correctional officers could not use force maliciously or sadistically for the very

purpose of causing harm.  Whitley, 475 U.S. at 320-21.

The Supreme Court has made it clear in Hudson that the same standard

applies to all prison excessive force claims.  Any reasonable official understands

---

[9]  See supra n.7.  Indeed, our excessive force analysis has never turned on the physical
location of the victim of a government official's application of excessive force.  The focus has
always been on the material factors, i.e., "the need for the application of force, the relationship
between that need and the amount of force used, the threat reasonably perceived by the
responsible officials, and any efforts made to temper the severity of a forceful response."
Hudson, 503 U.S. at 7-8.  Moreover, some conduct is so obviously contrary to constitutional
norms that even in the absence of caselaw, the defense of qualified immunity does not apply.
"When an excessive force plaintiff shows 'that the official's conduct lies so obviously at the very
core of what the . . . [Constitution] prohibits that the unlawfulness of the conduct was readily
apparent to the official, notwithstanding the lack of caselaw,' the official is not entitled to the
defense of qualified immunity."  Priester v. City of Riveria Beach, 208 F.3d 919, 926 (11th Cir.
2000) (quoting Smith, 127 F.3d at 1419) (a police officer intentionally allowing his police dog to
bite an unresisting suspect is guilty of the use of excessive force, despite the fact that no previous
case ever addressed the same factual circumstances); see also United States v. Lanier, 520 U.S.
259, 117 S.Ct. 1219, 1227-28 (1997) ("The easiest cases don't even arise. There has never been
... a section 1983 case accusing welfare officials of selling foster children into slavery; it does
not follow that if such a case arose, the officials would be immune from damages [or criminal]
liability.") (citations omitted); Wilson v. Layne, 526 U.S. 603, 615 (1999) ("'clearly
established'" for purposes of qualified immunity does not mean that "'an official action is
protected by qualified immunity unless the very action in question has previously been held
unlawful.'") (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

the contour of this right. <u>Hudson</u>, 503 U.S. at 7. In this case, Skritch claims that after he was rendered inert by the electric shock and was not resisting, indeed not capable of resisting, the officers administered a severe beating with no other purpose than the infliction of pain. The district court properly concluded that the officers who allegedly administered or failed to intervene in this beating are not entitled to qualified immunity.

## II. Denial of motion to dismiss

Turning to the claims of Thornton and Griffis that the district court erred in denying their motion to dismiss on the basis of qualified immunity, we first consider Skrtich's argument that we need not reach the substantive question of whether his complaint can withstand a motion to dismiss based upon a defense of qualified immunity because the Federal Rules of Civil Procedure do not permit successive Rule 12(b)(6) motions to dismiss, and because defendants' filing of their third motion to dismiss while the motion for summary judgment on qualified immunity was pending constituted an abuse of the court process.[10]

The first pleading filed by all defendants in this case was a motion to dismiss on October 4, 1999, asserting only that the plaintiff had failed to exhaust his

---

[10]Under the analysis in <u>Johnson</u>, __F.3d at __, the defendants' motion to dismiss was due to be denied because no defense of qualified immunity is available to Eighth Amendment claims of excessive force. However, because we find that the defendants' motion constituted an abuse of process, we need not address the merits of the motion.

15

administrative remedies. Before the court ruled, Skrtich filed a First Amended Complaint on October 25, 1999, solely to add a state law claim. All defendants then filed a *second* motion to dismiss, again raising the ground that the plaintiff had failed to exhaust his administrative remedies, and adding that the court should not accept jurisdiction over the state law claim if the federal claim was dismissed. Qualified immunity was not mentioned in either the first or the second motion to dismiss. The second motion to dismiss was denied on December 16, 1999.

On January 24, 2000, all of the defendants in this case filed their answer to the Amended Complaint. The answer did not set forth *any* affirmative defenses and did not mention qualified immunity in any way. On April 28, 2000, two days after Skrtich was deposed, an Amended Answer for all defendants was filed that alleged for the first time the affirmative defense of qualified immunity. On June 5, 2000, all of the defendants then filed a motion for summary judgment on the basis of qualified immunity. Prior to the hearing on summary judgment, however, Thornton and Griffis withdrew from the motion for summary judgment. More than one month later they filed their third motion to dismiss under Rule 12(b)(6).[11]

_____

[11] Rule 12(b)(6), Federal Rules of Civil Procedure, provides in relevant part that:
> (b)... Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject

Qualified immunity is an affirmative defense to personal liability, which must be pled, and if it is not, it is deemed waived. Moore v. Morgan, 922 F.2d 1553 (11th Cir. 1991). However, qualified immunity can be pled at various stages in a case. This Circuit has held that qualified immunity is a question of law that may be generally asserted (1) on a pretrial motion to dismiss under Rule 12(b)(6) for failure to state a claim; (2) as an affirmative defense in the request for judgment on the pleadings pursuant to Rule 12(c); (3) on a summary judgment motion pursuant to Rule 56(e); or (4) at trial. Ansley v. Heinrich, 925 F.2d 1339, 1241 (11th Cir. 1991). However, all these pleadings must conform to the Federal Rules of Civil Procedure. In this case, because a responsive pleading—an answer—had been filed, under the plain language of Rule 12(b), a motion to dismiss would have been inappropriate. Rule 12(b) provides that all defenses must be asserted either (1) in a responsive pleading, or (2) by motion under Rule 12(b) before interposing a responsive pleading if one is due. Furthermore, Rule 12(g) specifically prohibits a party that has previously filed a motion to dismiss from filing a second pre-

matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted.

17

answer motion to dismiss raising an omitted defense that could have been presented in the first motion to dismiss, "except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated."  Subdivision (h)(2) provides:

> A defense of failure to state a claim upon which relief can be granted, a defense of failure to join a party indispensable under Rule 19, and an objection of failure to state a legal defense to a claim may be made in any pleading permitted or ordered under Rule 7(a), or by a motion for judgment on the pleadings, or at the trial on the merits.

In this case, the motion to dismiss asserting qualified immunity was filed more than three months after the defendants' answer had been filed and after two prior motions to dismiss, both of which had omitted this defense and both of which had been denied.  The question is whether, under these circumstances, qualified immunity can be asserted in this fashion.

In Guzman-Rivera v. Rivera-Cruz, 98 F.3d 664 (1996), the First Circuit was similarly confronted with an untimely defense of qualified immunity.  The defendant in Guzman-Rivera waited until far into the litigation to assert the defense in its third motion for summary judgment.  The court then concluded that "the defense of qualified immunity [has] been waived for the current stage of the litigation: the defense has been available to defendants since early in the litigation

18

and, as the district court correctly found, the plaintiff has been prejudiced by the defendants' intentional strategy of delay." Id. at 669. The potential for abusive delays or manipulative uses of qualified immunity claims is clear, as a defendant can raise the defense at various stages of litigation and a denial of the defense at any of these stages generally entitles a defendant to an immediate appeal. English v. Dyke, 23 F.3d 1086, 1089 (6th Cir. 1994). Defendants who abuse the pretrial process through such stalling, however, may waive their right to raise the defense at the pretrial stage. Id.; see also Guzman-Rivera, 98 F.3d at 667-68; Apostol v. Gallion, 870 F.2d 1335, 1339 (1989) (defendants may waive or forfeit their right not to be tried if they use claims of immunity in a manipulative fashion). The result of filing an answer, withdrawing a previously filed motion for summary judgment after a plaintiff's deposition has been taken, and then filing a third motion to dismiss, is delay. Rule 12 does not permit legal tactics employed for delay and we cannot endorse them.[12] Moreover, as Skrtich notes, if a complaint is

_____

[12] Even if the complaint were deemed deficient in this case, an amended complaint would have been permitted reflecting the allegations in Skrtich's deposition. Presumably, Thornton and Anderson would have moved for summary judgment a second time and, for the reasons discussed above, the motion would have been correctly denied. Thus, the entire process in which a plaintiff is entitled to a resolution in a timely manner would have been subverted, an attempt that has obviously succeeded given the delays inherent in an appeal. Although generally a defendant is disadvantaged when the issue of qualified immunity is not resolved expeditiously, delay may work to the disadvantage of the plaintiff as well. Witnesses may become unavailable, memories may fade, attorneys fees and costs accumulate, and a deserving plaintiff's recovery may be delayed. See Apostol, 870 F.2d at 1338. Delay is also costly to the court system, demanding more time and energy from the court and retarding the disposition of cases.

deemed deficient, it is late in the lawsuit for plaintiffs to correct or amplify allegations in the Complaint, necessitating more motions and amended answers.

Under the circumstances in this case, we find that Thornton and Griffis' third motion to dismiss was improper and should have been dismissed by the district court.[13]  For the foregoing reasons, the district court's denial of the motion for summary judgement and motion to dismiss is

AFFIRMED.

---

[13]We note that such a motion <u>may</u> be construed as a request for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) and as such not subject to the consolidation requirements of Rule 12(g).  Fed.R.Civ.P. 12(h)(2); <u>English</u>, 23 F.3d at 1090 (failure to raise qualified immunity in pre-answer motion to dismiss did not constitute a waiver of the right to raise the defense in a second post-answer motion to dismiss under Fed.R.Civ.Proc. 12(h)(2) although the " trial court has discretion to find  waiver if a defendant fails to assert the defense within time limits set by the court or if the court otherwise finds that a defendant has failed to exercise due diligence or has asserted the defense for dilatory purposes.").

BLACK, Circuit Judge, concurring:

This case involves a claim of excessive force inflicted upon a prisoner who refused to comply with mandatory procedures for prison cell searches. The prisoner, Appellee David C. Skrtich, was incarcerated at Florida State Prison, X-Wing, which houses capital offenders and inmates who are severe discipline problems. Appellee met the latter of these categories.

At the time of the alleged excessive force, Appellee was serving a life sentence for aggravated sexual battery on a woman who was seven months pregnant. Appellee also was serving an additional fifteen-year sentence for repeatedly stabbing a prison guard in the chest with an ice pick, while being escorted by the guard to the shower. In the past five years, Appellee had over eighty disciplinary reports, more than half of which involved threatening or attacking prison staff. Due to disruptive behavior, Appellee was placed on close management status.

On January 13, 1998, correctional officers approached Appellee's cell to perform a routine cell search. Similar cell searches were conducted approximately three times per week. In accordance with prison procedures, the officers ordered Appellee to allow himself to be handcuffed so that he could be removed from the cell. When Appellee refused, standard policy mandated the use of a cell extraction

21

team.  Appellee was familiar with the cell extraction process, as he has been through at least eight cell extractions.  The cell extraction team summoned on January 13, 1998, consisted of Appellants Timothy Alvin Thornton, Jason Patrick Griffis, Willie Archie, Stacey L. Green, and James E. Dean.  Appellant Tony Anderson supervised the team from outside the cell.

Upon entering the cell, Griffis used an electronic shield to subdue Appellee.  The electric shock knocked Appellee to the floor.  Appellee's complaint and deposition are somewhat muddled and inconsistent as to the ensuing events.  Appellee's general allegations are that individual guards went well beyond the force necessary to subdue him and extract him from his cell. Viewing the facts in the light most favorable to Appellee, as is appropriate at this stage of the litigation, Appellants are not entitled to qualified immunity.  Therefore the result is correct.  The opinion, however, contains *dicta* that is not consistent with my understanding of the law, so I must join in the result and not the opinion.