United States Court of Appeals,

Eleventh Circuit.

No. 95-4665.

Vincent D. HARRIS, Plaintiff-Appellant,

v.

Curtis CHAPMAN, M.J. Piggott, J.W. Barton, T. Kovalsky, R. Ridley, Sgt. Bentley, and R. Cotterman, Defendants-Appellees.

Oct. 11, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 90-14061-CIV-UUB), Ursula Ungaro-Benages, Disrict Judge.

Before HATCHETT, Chief Judge, ANDERSON, Circuit Judge, and WOOD[*], Senior Circuit Judge.

WOOD, Senior Circuit Judge:

On September 25, 1989 several correctional officers at the Martin Correctional Institution ("MCI") in Martin County, Florida forcibly removed Vincent D. Harris from his cell and had his hair cut, allegedly while beating him and using racial slurs. Harris, alleging a violation of his constitutional rights under the First and Eighth Amendments, brought a § 1983 action against the six officers involved, all of whom are parties to this appeal.[1] Harris is familiar with both such claims and the prison haircut policies which underlie them; this is not his first such challenge.[2] This

---

[*]Honorable Harlington Wood, Jr., Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

[1]Curtis Chapman, then the Assistant Superintendent of MCI, was also named as a defendant in the original complaint. Since he was not alleged to have taken part in any use of excessive force, however, the district court entered judgment for Chapman at trial.

[2]See Harris v. Dugger, No. 89-3478, 897 F.2d 536 (11th Cir. Feb. 8, 1990) (unpublished disposition); Harris v. Dugger, 715

case and appeal present some new issues, however.

The district court dismissed Harris' First Amendment claim, but allowed his Eighth Amendment excessive force claim to go to the jury. That jury returned a verdict clearing five of the defendants but finding for Harris against the sixth, Sgt. John R. Cotterman.[3] The jury assessed $500 in punitive damages against Cotterman for his part in the ordeal but declined to award any compensatory damages. After receiving the verdict, however, the district court entered judgment as a matter of law in Cotterman's favor. The court also vacated an award of sanctions against the defendants for discovery violations which had been granted by a previous judge. Harris filed a timely notice of appeal, challenging these and other rulings.

## I. BACKGROUND

When the events in question occurred, Vincent D. Harris was an inmate at the Martin Correctional Institution ("MCI") in Martin County, Florida. One of the provisions of the Florida Administrative Code governing such institutions states that:

> [M]ale inmates shall have their hair cut short to medium length at all times with no part of the ear or collar covered. Sideburns shall not extend beyond the bottom of the earlobes and will have straight lines with no flare at the base. All male inmates shall be clean shaven, provided, however, an exemption from this requirement may be granted on the basis of a medical diagnosis when it is determined by the staff physician that shaving would be detrimental to the inmate's health.

F.Supp. 364 (S.D.Fla.1989), *vacated in part on reconsid.,* 757 F.Supp. 1359 (S.D.Fla.1991). *See also Harris v. Ostrout,* 65 F.3d 912, 915 n. 2 (11th Cir.1995) ("Appellant is a very litigious prisoner." (ten citations omitted)).

[3]Apparently omitting his first name in error, the complaint refers to this defendant as "R. Cotterman."

Fla.Admin.Code Ann. r. 33-3.002(11) (1989). This rule is enforced by similar Department of Corrections Rules and by MCI's internal operating procedures. Harris, however, is a Rastafarian. Rastafarians believe that men should not shave, cut, or comb their hair or beard. *See* Note, *Soul Rebels: the Rastafarians and the Free Exercise Clause,* 72 Geo.L.J. 1605, 1608 (1984). In accordance with these beliefs, which the parties assume are sincere, Harris refused to voluntarily submit to a haircut on several prior occasions and had been administratively disciplined at MCI for his reluctance.

On September 25, 1989, after receiving orders to enforce the hair length rule, several corrections officers at MCI[4] forcibly removed Harris from his cell, took him to the laundry room, and restrained him while his hair was cut by another inmate. Harris resisted in a variety of ways throughout the five to six minute affair (he admitted threatening to kill the prison barber, among others) and was accordingly restrained. Harris claims, however, that this restraint exceeded the amount of force authorized. He alleges that the officers kicked and beat him about the face; also that a towel was used around his neck to "squelch" and secure him. Though uncertain about the particular acts of each officer, Harris specifically charges that Sgt. Cotterman "snapped" his head back with the towel and twice "mugged" him in the face (a "mugging" or "palming" is apparently a slap or hit with a palm or open fist). He also claims that Sgt. Cotterman used various racial slurs and

---

[4]The officers involved are all party to this appeal. They are Myron Piggott, J.W. Barton, T. Kovalsky, R. Ridley, Sgt. Bentley, and J. Cotterman.

otherwise taunted him throughout the ordeal. Witness testimony supported these allegations at least in part. Following the event Harris was uncooperative with prison medical personnel. The routine examination which follows an authorized use of force against an inmate noted no visible injury. Later, however, Harris complained of back and knee pain resulting from the incident.

In April 1990 Harris filed this § 1983 action against the defendants-appellees. Harris charged that prison officials and officers violated his First Amendment right to freedom of religious expression when they cut his "religiously mandated" hair style. He further alleged that the officers used excessive force and subjected him to verbal abuse, thus violating his Eighth Amendment right to be free from cruel and unusual punishment.

In September 1991 defendants moved for summary judgment, or in the alternative for dismissal of Harris's complaint for failure to state a claim. In May 1992 the district court adopted the findings of the magistrate and dismissed Harris's verbal abuse claims. The court also granted defendants' motion for summary judgment on the First Amendment claim, finding the hair length rule constitutional, but also finding that a material issue of fact existed regarding the excessive force claim.[5] Finally, the district court, per Judge Jose A. Gonzalez Jr., also granted Harris's motion for sanctions because of the defendants' alleged failure to comply with discovery

---

[5]Defendants contended that Harris had not been injured during the haircut and thus could not allege the kind of injury necessary to prevail on a claim of cruel and unusual punishment. Harris, however, maintained that his back was injured while being restrained during the haircut and that the use of force was unnecessary and wanton, the legal benchmark.

requests. The order, however, stated that "[i]mposition of sanctions will be deferred until the conclusion of the case and considered at the time of taxing costs."

On December 30, 1992, this case was reassigned to Judge Ursula Ungaro-Benages. Harris, now represented by counsel (he had previously proceeded pro se), moved to reinstate his First Amendment claim. He asserted that the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb-1, mandated the application of a higher standard for First Amendment claims than that applied to his complaint previously.[6] This motion was denied.

After a four-day trial a jury returned its verdict on Harris's remaining excessive force claim. The jury found that defendants Piggot, Barton, Kovalsky, Ridley, and Bentley had neither used excessive force, nor "acted with malice, willfulness or callous indifference to the rights of the Plaintiff," the basic instructions for assessing compensatory and punitive damages, respectively. They also found, however, that defendant Cotterman had done both of these. The jury assessed $500 in punitive damages against Cotterman but declined to assess any compensatory damages.

Despite this verdict Judge Ungaro-Benages dismissed the charges against Cotterman and entered judgment as a matter of law in his favor pursuant to Fed.R.Civ.P. 50(b). After reviewing the record, Judge Ungaro-Benages also vacated the previous grant of sanctions against defendants for their alleged discovery

---

[6]Discussed further below, the RFRA reinstitutes a "compelling interest" standard in place of the "substantial interest" standard which applied previously.

violations.  Harris filed a timely appeal.

## II. DISCUSSION

Harris contends on appeal that the trial court erred:  1) in not reinstating his First Amendment claim;  2) in allowing the defendants to submit expert testimony to the jury;  3) in granting Cotterman's Motion for Judgment as a Matter of Law;  and 4) in vacating the previous award of sanctions.  Each of these contentions will be addressed below.

*A. First Amendment Claim/RFRA*

The district court, in adopting the findings of the magistrate, cited *Martinelli v. Dugger,* 817 F.2d 1499 (11th Cir.1987), *cert. denied,* 484 U.S. 1012, 108 S.Ct. 714, 98 L.Ed.2d 664 (1988), a case that upheld as constitutional a prison hair length rule virtually identical to the one in this case.  In doing so, the *Martinelli* court held that hair length regulations were the least restrictive means of advancing substantial governmental interests in maintaining prison security and in identifying escapees.  *Id.* at 1506-07.  Under the "substantial governmental interest" standard, this court has repeatedly found that such rules were permissible for those reasons.  *See, e.g., Brightly v. Wainwright,* 814 F.2d 612, 613 (11th Cir.), *cert. denied,* 484 U.S. 944, 108 S.Ct. 332, 98 L.Ed.2d 359 (1987);  *Maimon v. Wainwright,* 792 F.2d 133 (11th Cir.1986);  *Shabazz v. Barnauskas,* 790 F.2d 1536, 1540 (11th Cir.), *cert. denied,* 479 U.S. 1011, 107 S.Ct. 655, 93 L.Ed.2d 709 (1986).

The RFRA, passed by Congress in late 1993, changed the standard relied on in *Martinelli.*  The RFRA provides that

"[g]overnment may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person 1) is in furtherance of a compelling governmental interest; and 2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). This statute applies retroactively. *See* 42 U.S.C. § 2000bb-3(a); *Lawson v. Dugger,* 844 F.Supp. 1538 (S.D.Fla.1994), *rev'd on other grounds sub nom. Lawson v. Singletary,* 85 F.3d 502 (11th Cir.1996). Harris asserts that the district court's decision did not comply with the elements of this new standard and perhaps relied on factors such as economic costs which are not mentioned in RFRA. We disagree.

As an initial matter, though Harris offered no evidence on the point, *see Bryant v. Gomez,* 46 F.3d 948, 949 (9th Cir.1995) (describing the burden of the religious adherent), we may assume that the prison's hair length rule "substantially burdens" the exercise of his religion. Next we turn to the district court's analysis. Despite the magistrate's citation to *Martinelli,* it is clear that the district court was fully aware of the new standards articulated by RFRA and applied them. Indeed, the court discussed the issue orally when announcing its ruling:

> [I]t seems to me clear that the State has a compelling State interest in issues relating to the security of prison facilities and related issues, such as the ability to identify prisoners, to be able to prevent themselves from disguising themselves and from secreting objects in their hair and so forth.
>
> I also am not reluctant to find the least restrictive means of accomplishing that is to cut the inmate's hair so that the inmate cannot use his hair to disguise himself[,] to conceal his identity[,] or to hide objects in it.

> Frankly, putting cost aside, from a practical standpoint, I would be hard pressed to think of any other reasonable means in order to deal with this problem.

The district court's later omnibus order similarly dealt with the issue and specifically applied the RFRA statute. We thus find no merit in Harris's argument. Neither do we fault the district court's conclusions regarding the compelling interest and least restrictive means tests. It is well established that states have a compelling interest in security and order within their prisons, *see Lawson v. Singletary,* 85 F.3d 502, 512 (11th Cir.1996) (and citations therein). This is so especially in "close custody" facilities like MCI which contain extremely violent offenders. This general interest in security clearly includes other specific interests articulated by the district court such as the identification of escapees and the prevention of the secreting of contraband or weapons in hair or beards. *See also Hamilton v. Schriro,* 74 F.3d 1545, 1554-55 (8th Cir.1996) (finding prison hair length rule applicable to Native American, for similar reasons); *Phipps v. Parker,* 879 F.Supp. 734 (W.D.Ky.1995) (finding prison hair length rule applicable to orthodox Hasidic Jew, for similar reasons). Furthermore, like the courts cited here, we are unable to suggest any lesser means than a hair length rule for satisfying these interests, nor could Harris's counsel at oral argument. We thus join these courts in finding that a reasonable hair length regulation satisfies the least restrictive means test. The court's decision denying reinstatement of the claim is therefore affirmed.

*B. Opinion Testimony*

Harris next contends that the district court impermissibly

allowed the defendants to introduce "expert testimony" at trial and that this testimony "severely prejudiced" the presentation of his Eighth Amendment claims to the jury.  We review the district court's evidentiary rulings for abuse of discretion. *United States v. Norton,* 867 F.2d 1354, 1362 (11th Cir.), *cert. denied,* 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 701 (1989).

Harris claimed that his lower back was injured during his forced haircut.  In an attempt to discredit this assertion, defendants presented medical records that showed that defendant had complained of lower back pain nearly ten times in the year preceding the haircut.  These records were admitted into evidence without objection.  The defense then called Dr. Robert Smith, the Chief Medical Doctor at the South Florida Reception Center, to elaborate on the records. [7]  After reading through the various incident reports for the jury Dr. Smith was asked if, in his "opinion," Harris's records "indicate[d] a history of lower back pain."  Harris objected to this question as he considered it to be eliciting an opinion.  The district court recognized it as such but ruled that Dr. Smith could answer.  He did so by saying "Yes, they do."

As the district court recognized, the use of this particular witness for the task at hand was somewhat suspect, but we believe the decision to allow his limited response to such a general

---

[7]The defendants added Dr. Smith as a witness on the eve of trial.  Harris objected to the late inclusion of this "expert witness."  The court reluctantly permitted Smith to testify on the grounds that (1) he offer no expert testimony and (2) he restrict his comments to interpreting the abbreviated language in the reports and outlining the procedures by which the reports would have been made.

question was not an abuse of discretion. "History" is a word that has no special medical or legal significance. As defined by *The American Heritage College Dictionary* (2d ed. 1982), "history" can be 1) "a narrative of events," 2) "a chronological record of events," 3) "an interesting past" or 4) "a record of a patient's medical background." Thus to say that Harris had a "history of lower back pain" does not say very much. Moreover, one legal encyclopedia defines "opinion" as "an inference or conclusion drawn by a witness from facts, some of which are known to him and others assumed, or drawn from facts which although lending probability to the inference *do not evolve it by a process of absolutely necessary reasoning.*" 32 C.J.S. *Evidence* § 438 (1964) (emphasis added). Since Dr. Smith expressed nothing in his answer that was not a restatement of obvious, known facts—namely, that Harris had numerous documented incidents of lower back pain in the year(s) preceding the haircut—he stated no "opinion," let alone an expert one. We find the decision to allow the testimony was within the district court's discretion.

*C. Judgment as a Matter of Law (JNOV)*

Although the jury found in favor of the other defendants, it specifically found that Cotterman violated Harris's constitutional rights and that his actions were sufficiently callous to award $500 in punitive damages. Judge Ungaro-Benages, however, entered judgment as a matter of law in favor of Cotterman. The court stated:

> While the jury apparently believed the Plaintiff's testimony that Defendant Cotterman had restrained the Plaintiff by wrapping a towel around Plaintiff's head and used racial slurs during the incident, the fact that the jury exonerated the

other Defendants reflects that the jury rejected Plaintiff's argument that all of the Defendants acted in concert to inflict a beating upon the Plaintiff. Consequently, the jury could award punitive damages against Defendant Cotterman only if, standing alone, his conduct evidenced callous indifference or an evil intent or motuve (sic) to violate the Plaintiff's constitutional rights.

The evidence against Defendant Cotterman was simply insufficient to allow a reasonable jury to find that his conduct was callous and malicious. (cite omitted). There was no evidence that Defendant Cotterman's actions resulted in any physical injury to the Plaintiff. Similarly, there was no evidence from which a reasonable jury could conclude that Defendant Cotterman knew that by wrapping a towel around the Plaintiff's head that he would violate the Plaintiff's constitutional rights.

We review a decision to grant a judgment as a matter of law de novo. *Daniel v. City of Tampa*, 38 F.3d 546, 549 (11th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 2557, 132 L.Ed.2d 811 (1995). In considering a motion for a judgment as a matter of law, a court must view all the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989). The motion should be granted only if upon such consideration the court finds that reasonable people in the exercise of impartial judgment could not arrive at a contrary verdict. *Id.*

To establish an Eighth Amendment violation a prisoner must prove that his injury was caused by an "unnecessary and wanton infliction of pain." *Hudson v. McMillian,* 503 U.S. 1, 5, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992). The Supreme Court has admonished that in such cases "the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at

7, 112 S.Ct. at 999. The absence of "serious injury" alone is insufficient to dismiss a prisoner's Eight Amendment claim. *Id.* Instead, analysis of an Eighth Amendment excessive force claim is contextual and requires that many factors be considered: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (internal quotation marks omitted). Only "de minimis" uses of force are beyond constitutional recognition. *Id.* at 7-8, 112 S.Ct. at 999. Moreover, the Supreme Court has suggested that the type of punishment, rather than some arbitrary quantity of injury, may be relevant for Eighth Amendment claims. *Id.* at 8, 112 S.Ct. at 999.

The evidence before the jury included Harris's claims that the officers as a group (including Cotterman) kicked and beat him, and that Cotterman specifically snapped his head back with a towel, "mugged" or slapped him twice in the face, and harassed him with several racial epithets and other taunts. Harris claimed that some of these actions, particularly the kicking and use of the towel, caused or exacerbated the injuries to his back. Testimony supported both the allegations and the fact of his existing physical condition to some extent. His allegations were thus not merely conclusory, *see Bennett v. Parker,* 898 F.2d 1530, 1534 (11th Cir.1990), *cert. denied,* 498 U.S. 1103, 111 S.Ct. 1003, 112 L.Ed.2d 1085 (1991) (pre-*Hudson* ), and the jury chose to believe them at least in part. This is a very close case, but we find that in these particular circumstances, viewing the evidence in the light

most favorable to Harris, as we must, these claims together constitute more than a "de minimis" injury.[8] We will thus respect the jury's verdict that Harris's constitutional rights were violated.

We now turn to the $500 punitive damages award assessed against Cotterman. In the Eleventh Circuit, "[i]n some circumstances, punitive damages may be awarded in a § 1983 action even without a showing of actual loss by the plaintiff if the plaintiff's constitutional rights have been violated." *Kelly v. Curtis,* 21 F.3d 1544, 1557 (11th Cir.1994) (internal quotes and citations omitted). Such an award is authorized where "the defendant was motivated by an evil motive or intent, or ... reckless and callous indifference to federally protected rights." *Anderson v. City of Atlanta,* 778 F.2d 678, 688 (11th Cir.1985). This standard was made clear to the jury in its instructions. We find that the evidence, particularly the "mugging" and use of racial epithets and taunts, supports this relatively small award. The district court's judgment as a matter of law is thus reversed, with instructions to reinstate the verdict and $500 punitive damages award.

*D. Sanctions*

Finally, Harris claims that Judge Ungaro-Benages abused her discretion by vacating Judge Gonzalez's 1992 order granting sanctions against the defendants for discovery violations. We review a decision of the district court to deny sanctions for abuse

---

[8]The jury was instructed that "de minimis means insignificant or trifling."

of discretion. *United States v. Crosby,* 59 F.3d 1133, 1137 (11th Cir.1995).

The motion for sanctions was originally granted after the defendants missed a court-imposed deadline to respond to discovery requests by two days. These discovery requests, however, suffered from several defects (perhaps resulting from the fact that Harris was then proceeding pro se) and objections were filed. The requested discovery was provided in June of 1992, one month after sanctions were awarded and nearly three years before trial.

Judge Gonzalez's order acknowledged the granting of sanctions, but imposition of the same was deferred until costs were to be taxed. At that time, of course, Judge Ungaro-Benages was hearing the case. Her order vacating the award states that this was done following a review and consideration of relevant parts of the record.

District judges are accorded wide discretion in ruling upon discovery motions, and appellate review is accordingly deferential. A judge's decision as to whether a party or lawyer's actions merit imposition of sanctions is heavily dependent on the court's firsthand knowledge, experience, and observation. At times the actions of the individual or party involved may be judged over the course of time. Moreover, individual judges may have slightly different preferences or expectations. In view of these factors we find that Judge Ungaro-Benages's decision to vacate the limited order of Judge Gonzalez was within her discretion. In any event we see no prejudice in the discovery delay when the requested information was provided quickly and nearly three years before

trial.  The district court's order vacating the prior award of sanctions is affirmed.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM in part, REVERSE in part, and REMAND with instructions.  Each party will bear its own costs in this court.