[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 31, 2006
THOMAS K. KAHN
CLERK

No. 06-12422
Non-Argument Calendar

_____

D. C. Docket No. 05-00196-CV-WS-M

DAVID LEE JOHNSON,

Plaintiff-Appellant,

versus

ISAAC MOODY,
OFFICER DUNSFORD,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(October 31, 2006)

Before ANDERSON, BIRCH and FAY, Circuit Judges.

PER CURIAM:

David Lee Johnson, an Alabama state prisoner, appeals pro se the district court's grant of summary judgment in favor of the defendants, Officers Isaac Moody and Eddie Dunsford, in his civil rights action alleging excessive force in violation of the Eighth Amendment, filed pursuant to 42 U.S.C. § 1983. In his complaint, Johnson alleged that Officer Moody, a correctional officer at the Holman Correctional Facility where Johnson was incarcerated, intentionally kicked a metal tray door on Johnson's hand in an attempt to break Johnson's finger, resulting in injury. According to Johnson's affidavit, the incident occurred after Johnson refused to take a cold breakfast tray that Moody wanted to give him. Johnson further alleged that Officer Dunsford was present when the incident occurred, but he did not try to stop Moody, and Dunsford laughed after the incident. Johnson submitted affidavits from several inmates that corroborated his account of the incident.

In response, the defendants submitted affidavits and medical records from Prison Health Services. According to Moody's affidavit, Moody pushed the tray door closed after Johnson had removed his arm from the door, and the incident was an accident. Moody claimed that Johnson had refused to remove his arm from the tray door, and Moody was concerned that Johnson would throw something out of it. The defendants submitted a copy of the emergency medical report from Prison

2

Health Services, which stated that Johnson sustained a cut to his right middle finger for which he was given Motrin, a bandage, and a tetanus shot. The defendants also submitted copies of sick call requests that Johnson made over a period of six months, in which he complained of pain in his right middle finger for which he was treated with non-prescription pain medication and bandages. The X-rays of his finger revealed that it was not fractured.

The magistrate judge issued a report and recommendation ("R & R"), recommending the granting of the defendants' motion for summary judgment. The magistrate noted that, in order to establish an Eighth Amendment violation, the plaintiff must show an objective and subjective component. The magistrate found that Johnson did not establish the subjective component because he did not show that Moody acted maliciously or sadistically to cause harm. In addition, the magistrate found that Johnson did not establish the objective component because Johnson's injury was de minimus and not objectively harmful enough to establish a constitutional violation. Johnson filed objections to the R & R, arguing that he satisfied the objective and subjective components because Moody intentionally shut the tray door on his hand, and Johnson was treated for his injury for six months. The district court adopted and affirmed the magistrate's R & R and granted the defendants' motion for summary judgment.

On appeal, Johnson argues that the district court erred in granting the defendants' motion for summary judgment because the injury he sustained to his finger was not de minimus, as he received treatment for more than six months. Second, Moody's statements about the amount of force used were inconsistent because, in the Institutional Institute Report, Moody stated that he "kicked" the tray door, but in his affidavit, Moody stated that he "pushed" the tray door. Third, Moody provided inconsistent accounts of the incident because, in his affidavit, Moody stated that he wanted to shut the tray door because he thought that Johnson would throw something at the correctional officers. However, in the Institutional Institute Report, Moody did not mention his concern that Johnson would throw something and claimed that it was an accident.[1]

We review de novo a district court's grant of summary judgment. Mercado v. City of Orlando, 407 F.3d 1152, 1156 (11th Cir. 2005). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

[1]Johnson attached two affidavits to his brief, which primarily reassert his previous allegations. However, we do not consider the affidavits because they were never before the district court. See Smith v. United States, 343 F.2d 539, 541 (5th Cir. 1965) (declining to consider affidavits offered for the first time on appeal, and holding that Court of Appeals cannot "go behind the record" in reviewing a case).

4

judgment as a matter of law." Id. (quoting Fed.R.Civ.P. 56(c). When making this determination, we view all facts in the light most favorable to Johnson, the non-moving party. Id.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. The Eight Amendment's proscription of cruel and unusual punishment governs prison officials' use of force against convicted inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). In considering an Eighth Amendment excessive force claim, we must consider both a subjective and objective component: (1) whether the "officials act[ed] with a sufficiently culpable state of mind," and (2) "if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992) (internal quotations omitted). For the reasons set forth more fully below, Johnson has failed to establish the subjective and objective components of an excessive force claim.

## A. Subjective Prong

Under the subjective prong of our analysis of excessive force claims under the Eighth Amendment, force is deemed legitimate in a custodial setting only as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically for the very purpose of causing harm." Hudson,

5

503 U.S. at 6, 112 S.Ct. at 998. "Moreover, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002).

Five factors relevant to ascertaining whether force was used "maliciously and sadistically" for the purpose of causing harm include (1) the extent of the injury, (2) the need for application of force, (3) the relationship between the need and the amount of force used, (4) any efforts made to temper the severity of a forceful response, and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them. Campbell, 169 F.3d at 1375.

Applying the Campbell factors, we held in Skrtich that the officers' use of an electronic shield to shock and incapacitate the prisoner, after the prisoner refused to be handcuffed during a search of his cell, and the officers' subsequent punching, kicking, and beating the prisoner to the extent he had to be airlifted from the prison to a hospital where he remained for nine days, constituted an Eighth Amendment violation. Id. at 1299-1300. Conceding that some degree of force was lawful in light of the prisoner's non-compliance with the officers' order to submit to handcuffing, the prisoner challenged as excessive the assault that occurred after

6

he had been incapacitated by the shock of the electronic shield. Id. at 1301-02. We held that, although the officer may have been justified in taking extra precautions in performing the cell extraction because of the prisoner's status as a "disciplinary problem," the officers acted maliciously and sadistically when they beat the prisoner after he had been shocked with the shield. Id. at 1302. Similarly, in Bozeman v. Orum, 422 F.3d 1265, 1271-72 (11th Cir. 2005), we held that the correctional officers acted maliciously and sadistically because, once the officers had subdued Haggard, they held him face-down, forced Haggard's head into a mattress, and stated, "Oh, we don't think you've had enough," until Haggard was unconscious. Further, even though Haggard was clearly unconscious, the officers waited 14 minutes to call for medical assistance. Id. at 1273.

In the instant case, the district court did not err in finding that there was no genuine issue of material fact that Moody did not use force "maliciously and sadistically" for the very purpose of causing harm. Viewing the facts in the light most favorable to Johnson, Moody did not act maliciously or sadistically for several reasons. First, the extent of the injury shows that the force was not used maliciously and sadistically. See Campbell, 169 F.3d at 1375. Johnson sustained only a superficial injury to his finger and fingernail, for which he was treated for only 15 minutes on the day of the injury. The medical records reflect that

7

Johnson's treatment included bandages, non-prescription pain medication, and a tetanus shot. Although Johnson complained of pain for several months, the objective medical evidence does not support his subjective complaints because his finger was not fractured, he was able to bend it, there was no infection, and he only received non-prescription pain medication.

Second, the fact that Moody immediately reported the incident to Hicks, and the officers escorted Johnson to the Health Services Unit less than 20 minutes after the incident for treatment, shows that Moody's conduct was not malicious or sadistic because, unlike in Bozeman, the officers ensured that Johnson received prompt emergency treatment for his relatively minor injury. Third, unlike in Bozeman, Johnson does not claim that Moody, in applying force, used language that was threatening or abusive. See Bozeman, 422 F.3d at 1271 n.11 (explaining that, although words, alone, are not determinative of bad faith on the part of officers in their use of force, "threatening language as part of the totality of the circumstances can be relevant to what is constitutionally reasonable," or in the determination of reasonable inferences about the officers' subjective state of mind).

Fourth, unlike the prisoner in Skrtich, Johnson was not stunned or beaten during the incident, and he did not need treatment at an off-site hospital. See

Skrtich, 280 F.3d at 1302. Unlike the prisoner in Skrtich who was hospitalized for nine days, Johnson was only treated for 15 minutes on the day of his injury. Moreover, unlike in Bozeman, Moody did not repeatedly seek to harm Johnson or render him unconscious. See Bozeman, 422 F.3d at 1271-72. Moody's kicking of the tray door with his foot was a single incident resulting in a minor injury. Thus, although Moody arguably could have waited to see whether Johnson would remove his hand from the tray door completely, Johnson failed to produce evidence showing that this action was taken "maliciously and sadistically for the very purpose of causing harm." See also Hudson, 503 U.S. at 6, 112 S.Ct. at 998; see also Campbell, 169 F.3d at 1374 (explaining that "force does not violate the Eighth Amendment merely because it is unreasonable or unnecessary"). Furthermore, to the extent that Dunsford was present during the alleged use of force and failed to intervene, no constitutional violation occurred because Moody did not use excessive force. See Skrtich, 280 F.3d at 1301. The district court, therefore, did not err in concluding that no genuine issue of material fact existed as to whether the defendants used excessive force in violation of the Eighth Amendment.

## B. Objective Prong

We next consider whether the alleged wrongdoing was "objectively harmful enough to establish a constitutional violation." Hudson, 503 U.S. at 8, 112 S.Ct. at 999. Eighth Amendment claims based on de minimis uses of physical force by prison guards are not cognizable unless they involve "force that is repugnant to the conscience of mankind." Id. at 9-10, 112 S.Ct. at 1000. We have held that "an injury can be 'objectively, sufficiently serious' [to constitute a constitutional violation] only if there is more than de minimus injury." Boxer v. Harris, 437 F.3d 1107, 1111 (11th Cir. 2006).

In Hudson, the Supreme Court held that Hudson's injuries, which included bruises, swelling, loosened teeth, and a cracked dental plate, were not de minimis for Eighth Amendment purposes. Hudson, 503 U.S. at 10, 112 S.Ct. at 1000. Similarly, in Skrtich, we held that the kinds of injuries the prisoner suffered, including rib fractures, back injuries, lacerations to the scalp, and abdominal injuries that required nine days of hospitalization and months of rehabilitation, could not have been the result of a de minimus use of force. Skrtich, 280 F.3d at 1302.

In Harris v. Chapman, 97 F.3d 499, 505-506 (11th Cir. 1996), the defendant, an officer at a correctional facility, moved for judgment as a matter of law after a

10

jury verdict in the prisoner's favor as to his excessive force claim. The district court granted the defendant's motion, and we reversed, noting that it was a "very close case." Id. at 506. The facts at trial revealed that officers, including the defendant, kicked and beat Harris, and the defendant snapped Harris's head back with a towel, slapped him twice in the face, and harassed him with racial epithets. Id. at 505-06. We held that Harris's injuries were more than de minimus because the defendant's actions caused or exacerbated Harris's back condition. Id. at 506.

Here, unlike in Skrtich and Harris, the minor nature of Johnson's injury suggests that the force applied was de minimus. Although Johnson argues that his injuries were not de minimus because he was treated for more than five months, the fact that Johnson made sick call requests does not mean that his subjective complaints of pain were accurate or that his injury was serious. The medical records bely his claim that his injury was not de minimus because he was given a tetanus shot, and he was subsequently treated with bandages and non-prescription pain relievers. Johnson's finger was not broken or fractured, and there is no evidence that he suffered any permanent injury or debilitating pain.

Johnson argues that there is a genuine issue of material fact as to the degree of force Moody used because Moody stated in his affidavit that he "pushed" the tray door, but, in the "Institutional Institute Report," Moody stated that he "kicked"

the tray door. Whether Moody pushed or kicked the tray door is not determinative because, as discussed above, Johnson's injury was de minimus.

Finally, Johnson argues that there is a genuine issue of material fact regarding Moody's credibility because Moody first stated that he pushed the door with his foot and later stated that he kicked it. Even if these statements create an issue of fact about Moody's credibility, Moody's credibility is not a material issue because we assume for purposes of summary judgment that Johnson's version of the incident is true. See Mercado, 407 F.3d at 1156.

From the evidence in the record, a rational jury could draw two possible conclusions: (1) that the incident was an accident, or (2) that Moody deliberately and perhaps unnecessarily applied a relatively minor amount of force in response to Johnson's failure to follow a direct order. Neither scenario would involve a use of force that is "repugnant to the conscience of mankind." See Hudson, 503 U.S. at 9-10, 112 S.Ct. at 1000. Accordingly, there is no genuine issue of material fact that Johnson's injury was not "objectively, sufficiently serious" to constitute a constitutional violation. See Boxer, 437 F.3d at 1111. Accordingly, we affirm the district court's decision granting summary judgment to the defendants on Johnson's excessive force claim.

**AFFIRMED.**

12