[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12296
Non-Argument Calendar
_____

D.C. Docket No. 2:10-cv-01178-IPJ-TMP


STEVE LEDLOW, JR.,

Plaintiff - Appellant,

versus

STANTHONY GIVENS,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(December 12, 2012)

Before MARCUS, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

State prisoner Steve Ledlow, Jr., proceeding *pro se*, appeals the district court's grant of summary judgment in favor of defendant correctional officer Stanthony Givens, in his 42 U.S.C. § 1983 civil complaint.  On appeal, Ledlow argues that Givens: (1) used unreasonable and extraordinary force against him during an altercation with another inmate and again after Ledlow was secured; and (2) failed to intervene to prevent another inmate from kicking Ledlow.[1]  After a thorough review of the record and briefs, we affirm.

## I. Background

The parties proffer different versions of the events.  Ledlow alleges that on the day of the incident he engaged in a verbal altercation with another inmate, Reginald Coleman, who threatened him.  Ledlow claims that Givens warned him that he had a knife, should trouble ensue.  Givens and Coleman were both being transported from the healthcare unit at the time of the incident.  While Ledlow was

---

[1] Ledlow briefly asserts that the district court unfairly denied his requests of documents and access to discovery.  Federal Rule of Civil Procedure 26(b) allows the district court to limit discovery by court order.  Furthermore, a party must "plainly and prominently" indicate an issue if he wishes to raise it on appeal.  *United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (holding an issue abandoned when it is not "plainly and prominently" raised on appeal). Ledlow did not do so.

in the healthcare unit, he saw Givens loosen one of Coleman's handcuffs. Upon leaving the healthcare unit, Ledlow removed his own handcuffs and followed Coleman, who was running toward the showers to retrieve a hidden knife. Givens in turn followed Ledlow, stabbed him in the face with a pocketknife, and struck him unconscious with his baton. Coleman subsequently kicked Ledlow and Givens failed to intervene until another officer arrived on the scene. After the incident, on the way back to the infirmary, Givens threatened Ledlow and slapped him repeatedly, while an unknown officer choked him and pushed him to the ground. Ledlow submitted affidavits from inmates Shawn Abney and Willie Ricks in support of his claims. Abney claimed to have seen Givens take out a pocketknife, stab Ledlow in the face, and beat him. Ricks stated that he saw Givens slap, punch, and kick Ledlow when Ledlow was in handcuffs.

Givens, however, claims that he and another officer were returning Ledlow and Coleman from the healthcare unit when Ledlow escaped from his handcuffs and attempted to assault Coleman. Givens ordered Ledlow to stop, and when he did not comply, Givens used forward cutting strikes with his baton to try to subdue Ledlow, inadvertently striking Ledlow on the right side of the face. Givens denies using a pocketknife. The other officer secured Ledlow and retrieved a homemade handcuff key from Ledlow's possession. Givens and the other officer then returned

3

Ledlow to the healthcare unit to receive treatment for his injuries. Ledlow's injuries consisted of a bloody nose and a two-centimeter laceration on the right side of his face, which required six sutures. As a result of the incident, the correctional facility found that Ledlow had failed to obey a direct order.

Ledlow filed a 42 U.S.C. § 1983 complaint asserting Eighth Amendment excessive force claims against Givens. He sought compensatory damages of $85,000, punitive damages of $50,000, medical expenses related to his injuries, attorneys' fees and court costs. The district court granted Givens's motion for summary judgment and dismissed Ledlow's claims with prejudice. The court held that Givens was faced with a "serious safety and security problem," one which "clearly required an immediate and forceful response." The court emphasized the great deference given to prison officials in confrontations with inmates, and noted Givens's attempts to obtain medical treatment for Ledlow. The court additionally found that Givens's decision to wait for assistance before intervening was both reasonable and in good faith, and any abuse Ledlow was subjected to after he was restrained was *de minimis*.

## II. Standard of Review

We review a district court's grant of a motion for summary judgment de novo, and apply the same legal standards that govern the district court's analysis.

4

*Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010).  Summary judgment is proper if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To avoid summary judgment, the opposing party must make enough of a showing that a jury could reasonably find in favor of that party.  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## III. Analysis

### A. Excessive Force

Under the Eighth Amendment, the use of force in a prison setting is legitimate when it is applied in good faith to maintain discipline and is not applied maliciously and sadistically to cause harm.  *Hudson v. McMillan*, 503 U.S. 1, 6, 112 S. Ct. 995, 998 (1992).  The Supreme Court has outlined four factors in determining whether the application of force by a jail official was malicious or sadistic: (1) the need for the application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by responsible officials; and (4) any efforts made to temper the severity of the forceful response.  *Whitley v. Albers*, 475 U.S. 312, 321, 106 S. Ct. 1078, 1085 (1986).  The immediate offer of medical assistance demonstrates an effort to temper the severity of the response.  *Fennell v. Gilstrap*, 559 F.3d 1212, 1220 (11th Cir. 2009) (per curiam).

5

Additionally, a prisoner may avoid summary judgment "only if the evidence viewed in the light most favorable to him goes beyond a mere dispute over the reasonableness of the force used and will support a reliable inference of wantonness in the infliction of pain." *Brown v. Smith*, 813 F.2d 1187, 1188 (11th Cir. 1987) (per curiam). Even where the force an officer uses is unreasonable, we do not recognize *de minimis* uses of physical force as violations of the Eighth Amendment. *Hudson*, 503 U.S. at 9–10, 112 S. Ct. at 1000; *see also Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006) (holding that an injury is sufficiently serious to constitute an Eighth Amendment violation only if the injury is more than *de minimis*).

Here, Ledlow claims that Givens used excessive force during the altercation with Coleman and again after Ledlow was secured, and that Givens's actions were not an attempt to restore order, but an unnecessary and wanton infliction of pain. Examining the facts as reasonably perceived by Givens "on the basis of the facts known to him at the time" of the incident, *Fennell*, 559 F.3d at 1217, but taking the version of the facts in the most favorable light to Ledlow, we agree that Givens's use of force to regain control over Ledlow was a good faith effort to maintain discipline rather than a malicious and sadistic act of harm. *See Hudson*, 503 U.S. at 6, 112 S. Ct. at 998. An analysis of the factors under *Whitley* shows that Givens's

6

use of force did not constitute a violation of the Eighth Amendment. 475 U.S. at 321, 106 S. Ct. at 1085. The evidence shows that Ledlow removed his own handcuffs and was chasing after Coleman, with whom he had a verbal altercation earlier that morning. With a potentially dangerous altercation looming, Givens reasonably perceived a threat and applied force in response. *Id.* Further, Givens's application of force was proportional to the need. The use of his baton to subdue Ledlow is reasonable in light of the threat that Ledlow posed, particularly because a baton is the type of instrument one would expect corrections officers to use in maintaining discipline. *See id.*

Although Givens's use of his personal pocketknife in attempting to bring Ledlow under control admittedly seems unusual, we give "wide deference" to prison officials who are acting to preserve discipline. *See Fennell*, 559 F.3d at 1217. Although Ledlow argues that a pocketknife is intrinsically unreasonable, this court has held that a defendant must show more than mere disagreement over the reasonableness of the force. *See Brown*, 813 F.2d at 1189 (holding that in addition to a question of reasonableness, the evidence must support a reliable inference of wantonness in the infliction of pain in order to avoid summary judgment). In light of the deference given to prison officials, the threat posed by Ledlow, and Ledlow's *de minimis* injuries, Givens's actions did not rise to a level to support an inference

7

that Givens wantonly inflicted pain on Ledlow.  Givens's lack of wantonness is bolstered by the fact that he returned Ledlow to the healthcare unit for medical care after the incident.  *See Fennell*, 559 F.3d at 1220 (holding that an immediate offer of medical assistance is an effort to temper the severity of a forceful response).

Finally, any force used after Ledlow had been restrained was *de minimis*.  *See Hudson*, 503 U.S. at 9–10, 112 S. Ct. at 1000; *Boxer X*, 437 F.3d. at 1111.  While the use of force against an inmate who no longer poses a threat is not permitted, not all applications of excessive force constitute an Eighth Amendment violation.  *See Hudson*, 503 U.S. at 9–10, 112 S. Ct. at 1000.  Taking the facts in the light most favorable to Ledlow, Givens beat Ledlow after he had been secured in handcuffs and no longer posed a threat.  The affidavit of inmate Ricks asserts that Givens punched, slapped and kicked Ledlow.  Ricks' affidavit, however can be disregarded because its allegations of kicking and punching are incompatible with Ledlow's allegations that Givens merely slapped him with an open hand.  *See Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005).

Although it is not clear which specific injuries might have resulted from Givens slapping Ledlow, in total, Ledlow sustained only a bloody nose and a small laceration; it is undisputed that the laceration resulted from the attempt to secure Ledlow.  In *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996), officers kicked,

8

slapped, beat, and snapped the plaintiff's head back with a towel.  While being a close call, we held that the plaintiff's injuries were more than *de minimis* because they resulted in exacerbation of the plaintiff's back condition.  *Id.* at 506.  Here, the force used was even less than that in *Harris*.  Ledlow sustained at most a mere bloody nose, and suffered no lasting injury.  Thus, Givens's actions do not rise to the level needed to constitute an Eighth Amendment violation.  *See Boxer X*, 437 F.3d at 1111 (holding an injury is sufficiently serious to constitute an Eighth Amendment violation only if there is more than *de minimis* injury); *Brown*, 813 F.2d at 1189.  "[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action."  *Hudson*, 503 U.S. at 9, 112 S. Ct. at 1000.

## B. Failure to Intervene

Even when an officer is not a participant in the excessive force, he can still be liable if he fails to take reasonable steps to protect the victim.  *Skrtich v. Thortan*, 280 F.3d 1295, 1301 (11th Cir. 2002).  The plaintiff has the burden to demonstrate that the defendant was in a position to intervene but failed to do so.  *Hadley v. Gutierrez*, 526 F.3d 1324, 1330–31 (11th Cir 2008).  Ledlow has not met this burden.

Ledlow argues that Givens did not intervene when Coleman was kicking him. The evidence here is limited.  Ledlow alleges that Coleman kicked him after he was

9

on the ground and that Givens did not intervene until another officer arrived. Ledlow indicated that he was on the ground when he was kicked, but presented no evidence that Givens had the ability to reasonably insert himself between Ledlow and Coleman to stop the assault without additional help. Furthermore, no evidence has been presented as to how long this assault went on before intervention occurred.

The district court did not err in granting Givens's motion for summary judgment. Givens's use of force was a good faith effort to maintain discipline rather than an effort to maliciously and sadistically cause harm. *See Hudson*, 503 U.S. at 6, 112 S. Ct. at 998. Further, Ledlow failed to show that Givens had the ability to intervene in the altercation between the two inmates but did not do so. *See Hadley*, 526 F.3d at 1330–31.

A reasonable jury could not find that Givens used excessive force in violation of the Eighth Amendment. Accordingly, we affirm.

**AFFIRMED.**

10